247 Wis.2d 957 (2001)
2001 WI App 209
634 N.W.2d 563
J. Marshall OSBORN and Center for Equal Opportunity, Plaintiffs-Respondents-Cross-Appellants,
v.
BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, Defendant-Appellant-Cross-Respondent.[]
No. 00-2861.
Court of Appeals of Wisconsin.
Submitted on briefs April 18, 2001.
Decided August 30, 2001.
*962 On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of James E. Doyle, attorney general, and Alan Lee, assistant attorney general.
On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the brief of Daniel Kelly of Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C. of Milwaukee.
*963 Before Dykman, Roggensack and Deininger, JJ.
¶ 1. ROGGENSACK, J.
J. Marshall Osborn and the Center for Equal Opportunity made public record requests to the University of Wisconsin System for records of applicants to its campuses and two graduate schools. The circuit court granted the requests for records of those applicants who had not enrolled at the University, but it denied the requests for those who had matriculated, including a request by Osborn that personally identifiable information be redacted from their records prior to production. The University appealed, and Osborn cross-appealed. Because we have concluded that all the records sought are education records for which 20 U.S.C. § 1232g and public policy prohibit disclosure and because the University is not required to create records to satisfy Osborn's request, we reverse the order to provide records of applicants who did not enroll and affirm the circuit court's decision to refuse to direct the University to create new records for the applicants who did enroll.

BACKGROUND
¶ 2. This appeal arises out of public record requests directed to the University of Wisconsin System pursuant to WIS. STAT. § 19.35 (1999-2000)[1] which *964 sought records relating to applicants for admission[2] to eleven campuses in the University System, the University of Wisconsin Law School and the University of Wisconsin Medical School for 1993 to 1999. It is asserted that the requests were made to facilitate the study of the effects of race, ethnicity, immigration and other factors on the University's admission decisions. Osborn also planned to distribute the information received to media, public officials and the public.
¶ 3. The University responded by providing more than 390 pages of records to Osborn, but it did deny some requests.[3] In part, the denials were based on the University's not maintaining the information requested, and in part on the University's determination that it was prohibited from disclosing the requested records for the following reasons: (1) the University's obligations in regard to the requested records under the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, as amended; (2) the public *965 interest in maintaining the privacy and reputational interests of the enrollees and applicants for admission outweighs the public interest in disclosure; and (3) the lack of a requirement to create new records in order to satisfy Osborn's requests.
¶ 4. In an attempt to compel the production of the requested records, Osborn brought a mandamus action in the circuit court. The court sustained the University's determination that 20 U.S.C. § 1232g prohibited it from disclosing the records for those applicants who did enroll in the University and that it was not required to create new records to satisfy Osborn's requests. The court also held that neither federal nor state law applied to records of those applicants who had not matriculated at the University because they were not "students" under those laws, and it ordered the production of their records. The circuit court did not conduct a balancing of the applicants' privacy and reputational interests with the public's interest in disclosure to determine whether, on balance, public policy favored access to or denial of the records. The University appeals the order directing it to produce the unenrolled applicants' records, and Osborn cross-appeals the court's refusal to order production of the records of those applicants who did matriculate, redacted to remove personally identifiable information.

DISCUSSION
Standard of Review.
[1-3]
¶ 5. Whether a circuit court's order is final is a question of law, which we review de novo. Fredrick v. City of Janesville, 92 Wis. 2d 685, 688, 285 N.W.2d 655, 657 (1979). We also review as a question of law whether *966 federal or Wisconsin statutes were properly applied to the undisputed facts before us. State ex rel. Blum v. Board of Educ., Sch. Dist. of Johnson Creek, 209 Wis. 2d 377, 381, 565 N.W.2d 140, 142 (Ct. App. 1997). Additionally, the application of the balancing test to a request for access to public records presents a question of law, which we decide independently of any action or inaction by the circuit court. Wisconsin Newspress, Inc. v. School Dist. of Sheboygan Falls, 199 Wis. 2d 768, 784, 546 N.W.2d 143, 149 (1996).
Finality.
¶ 6. Osborn contends that the circuit court's order is not final because the court did not know whether certain records existed in the form requested, and the court did not rule on the sufficiency of the law school's response. He argues there were factual and legal questions that remained unresolved; therefore, this appeal should be dismissed. The University counters that, notwithstanding those concerns, the court's decision covered all factual alternatives and legal questions. Therefore, the decision resolved all issues relating to what information the University was required to provide or not provide, which caused the circuit court's order to be a final order.
[4, 5]
¶ 7. Only final orders may be appealed as of right. WIS. STAT. § 808.03(1). The test for whether an order of a circuit court is final is whether the court contemplated that it be final at the time of entry of the order. Fredrick, 92 Wis. 2d at 688, 285 N.W.2d at 657. Here, the circuit court decided that the University was not to fulfill the objected-to requests for any student who enrolled at the University and that it was required to provide those records for applicants who did not enroll. *967 It also decided that the University was not required to create records to satisfy Osborn's requests. That it was unknown whether the University maintained a certain type of record is of no consequence because, if it did and the court ordered its production, the University was obliged to comply, and if the record did not exist, obviously the University could not comply. The circuit court also applied its order to the law school, which had responded but which response the court had not had the opportunity to review. Therefore, its order addressed each item in controversy in a way that established the rights of the parties to the mandamus action. Accordingly, we conclude it was a final order.
The Public Records Requests.
1. General Principles.
[6-8]
¶ 8. Upon a proper written request, a requester has the statutory right to inspect records kept by state agencies. WIS. STAT. § 19.35(1). Wisconsin courts have long recognized that records of government agencies should be open and available to the public as a necessary component to maintaining an informed electorate in a representative form of government. WIS. STAT. § 19.31; Mayfair Chrysler-Plymouth, Inc. v. Baldarotta, 162 Wis. 2d 142, 155, 469 N.W.2d 638, 642 (1991). The Wisconsin Supreme Court has held that:
[T]he general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential.
Hathaway v. Green Bay Sch. Dist., 116 Wis. 2d 388, 397, *968 342 N.W.2d 682, 687 (1984). However, the open records laws are not without limits, particularly when personally identifiable information bearing on privacy and reputational interests is sought. Milwaukee Teachers' Educ. Ass'n v. Milwaukee Bd. of Sch. Directors, 227 Wis. 2d 779, 786, 596 N.W.2d 403, 406 (1999). Additionally, certain records which are specifically exempted from disclosure by state or federal law or which are authorized to be exempted from disclosure by state law need not be produced. WIS. STAT. § 19.36(1).
[9, 10]
¶ 9. A written request for public records that has been denied in whole or in part by a state agency is brought before the circuit court by an action for mandamus. WIS. STAT. § 19.37. On appeal of a circuit court's order in such an action, we engage in a step-by-step analysis to determine whether records have been appropriately denied or provided. Wisconsin Newspress, 199 Wis. 2d at 784, 546 N.W.2d at 149. First, we decide whether the custodian's denial of access was made with the requisite specificity. Id. Second, we determine whether the stated reasons were sufficient for denial or an order directing access. Id. In regard to that second step, we also examine whether the circuit court made a factual determination based on the evidence of record, unless the facts are undisputed, whether the requested documents implicated a public interest in secrecy if so asserted by the custodian and, if they do, whether those interests outweigh the public's interest in access to the records. Id. However, if the information requested is specifically exempted from disclosure by a statute, then there is no need for the custodian to weigh competing public interests, as the legislature has already done so by the statutory exemption. Blum, 209 Wis. 2d at 387, 565 N.W.2d at 145.
*969 [11]
¶ 10. Here, one of the University's bases for objection was its obligation under 20 U.S.C. § 1232g to maintain the privacy of these records. That is an objection made with the requisite degree of specificity. Rathie v. Northeastern Wisconsin Technical Inst., 142 Wis. 2d 685, 687, 419 N.W.2d 296, 297 (Ct. App. 1987). Therefore, we next examine the sufficiency of that basis for denial. Wisconsin Newspress, 199 Wis. 2d at 784, 546 N.W.2d at 149.
2. Nature of Records Sought.
[12]
¶ 11. The records subject to the appeal and cross-appeal are those in the possession of the University for two classes of applicants for admission: those who did not enroll and those who did. Federal law proscribes access to records maintained by an educational institution if they are "education records." 20 U.S.C. § 1232g. Therefore, in order to analyze the records at issue here, our first determination must be whether the records are education records under federal law. The facts relevant to this determination are undisputed; therefore, we are presented with a question of law. Boutelle v. Chrislaw, 34 Wis. 2d 665, 673, 150 N.W.2d 486, 490 (1967).
¶ 12. FERPA applies to all educational agencies and institutions, which include high schools, post-secondary institutions and educational agencies, that may receive money under a program administered by the United States Department of Education.[4] 34 C.F.R. *970 §§ 99.1 and 99.3 (2000). The Secretary of the Department is charged with enforcing its provisions. 20 U.S.C. § 1232g(f). The Act benefits parents and students in regard to their interests in "education records," and it gives parents and students certain rights of access, notice and privacy with regard to those records. In this decision, we address only the privacy facet of the Act.[5] The Act provides in relevant part:
No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of educational records (or personally identifiable information contained therein other than directory information ...) of students without the written consent....
20 U.S.C. § 1232g(b)(1). There are certain exceptions to this prohibition, but none that are relevant here.
¶ 13. The Secretary has promulgated regulations to implement the Act. The regulations define "education records" as follows:

*971 Education records. (a) The term means those records that are:
(1) Directly related to a student; and
(2) Maintained by an educational agency or institution or by a party acting for the agency or institution.
....
(Authority: 20 U.S.C. 1232g(a)(4))
34 C.F.R. § 99.3. The Act defines a "student" as "any person with respect to whom an educational agency or institution maintains education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution." 20 U.S.C. § 1232g(a)(6). In order to implement this provision and explain in which educational agencies or institutions a person may have the status of "student," the Secretary promulgated the following definition:

Student, except as otherwise specifically provided in this part, means any individual who is or has been in attendance at an educational agency or institution and regarding whom the agency or institution maintains education records.
(Authority: 20 U.S.C. 1232g(a)(6))
34 C.F.R. § 99.3. Therefore, past, as well as present, relationships can form the basis for student status under FERPA.
¶ 14. The circuit court determined that those applicants who had not enrolled in the University could not be students under the Act, and therefore, their records were not "education records" for which protection is afforded. However, it relied on a definitional *972 limitation of who is a student which was less understandable and which no longer applies.[6] The current regulations define a student as, "any individual who is or has been in attendance at an educational agency or institution." 34 C.F.R. § 99.3 (emphasis added). In so doing, it causes us to focus on the relationship of the individual whose records are at issue to the entity that created the records when the records were created.[7] This permits us to determine the nature of the physical documents that have been created. Here, the records of a high school student were education records when the *973 high school created them. In a like manner, the records of a post-secondary student were education records when they were created by the post-secondary institution that the individual attended. Additionally, those who took the standardized tests Osborn seeks were students "in attendance at" an educational agency when they took the examinations.[8]
¶ 15. Once created by an agency or institution while an individual is a student at that agency or institution, the records become "education records" within the Act. Nothing in the Act causes a change in the nature of those records. They are confidential education records when the educational agency or institution where the student is in attendance creates them, and they remain confidential in the hands of an educational institution that later receives them. To clearly demonstrate this, the Secretary promulgated rules addressing the Act's contemplation of record transfers from one educational institution to another. See 34 C.F.R. §§ 99.31, 99.33, 99.34. The Secretary's regulations, which specifically prohibit "redisclosure" by a party that did not create the record without the prior consent of the parent or student, confirm that the nature of education records remains unchanged in the hands of the recipient. 34 C.F.R. § 99.33(a)(1).[9] As the *974 supreme court noted in Milwaukee Teachers', "The key to determining the status of records under the open records law is the nature of the records, not their location." Milwaukee Teachers', 227 Wis. 2d at 792, 596 N.W.2d at 409. Therefore, we conclude that the effect of the definition of student, which includes those individuals who are or who have been in attendance at any educational agency or institution, when combined with the prohibition against redisclosure, ensures that education records already created will continue to be protected and used only for the purpose for which they were given to a third party. 34 C.F.R. § 99.33; 53 Fed. Reg. 11,942, 11,951 & 11,954 (Apr. 11, 1988).
¶ 16. Here, the records of non-enrolled applicants to the University were created by a high school, by a post-secondary school or by an educational testing agency and sent to the University for its use. They relate to students who were "in attendance" at those schools or agencies when the records were created. Therefore we conclude that the records transferred to the University from another educational institution or agency are education records under the Act while in the hands of the University. As such, they may be used only for those purposes for which they were transferred to the University: evaluations of applications for admission. 34 C.F.R. § 99.33(a)(2). Any other use, such as those contemplated by Osborn, is prohibited under the Act unless the prior written consents of the applicants are obtained. 34 C.F.R. § 99.33(e).
*975 [13]
¶ 17. Furthermore, we are not persuaded that United States v. Brown Univ., No. Civ. A. 91-3274, 1992 WL 2513 (E.D. Pa. Jan. 3, 1992), or any other out-of-state case[10] cited to us, has any relevance to the questions with which we are presented. Brown, an opinion which we note is unpublished, opined that the term "student" was not defined differently in different parts of the Act because there was no legislative history to support such a view. To some extent we agree with that view because we do not conclude that student is "defined differently" in different sections. However, "student" is qualified by different modifiers in various sections of the C.F.R., as explained by the Secretary's publication in 53 Fed. Reg. 11,942 et seq., and those modifiers affect our opinion as well as bear upon the *976 other two facets of the Act, access and notice, which we do not address. Therefore, because the records Osborn requested are specifically exempted from disclosure by federal law, the University is not required to produce them. WIS. STAT. § 19.36(1). Additionally, even though we have concluded that the University lawfully denied access to the requested education records under § 19.36(1), nondisclosure of those records was also properly denied "by virtue of the significant public policy inherent in the federal statute." Rathie, 142 Wis. 2d at 690, 419 N.W.2d at 299.
3. Public Policy.
¶ 18. We concluded in Rathie that FERPA was both a source and an indication of the public policy establishing "an overriding public interest in preserving privacy of student education records." Id. After considering the nature of the education records requested and their coverage under the federal Act, we concluded that "unrestricted third-party access ... would directly undercut the public policy inherent in [FERPA]." Id. at 693, 419 N.W.2d at 300. We also concluded that the public interest in maintaining the privacy of education records outweighs any public interest in their disclosure. Id. at 694, 419 N.W.2d at 300-01.
¶ 19. The very same education records are being sought for students who enrolled at various University of Wisconsin System schools and programs as for the applicants who did not enroll. We held in Rathie that the public policy exemplified by FERPA renders the records of enrolled students inaccessible under the Wisconsin Open Records law, regardless of whether the federal Act constitutes a direct statutory exemption. Id. at 689-90, 419 N.W.2d at 298-99. The Rathie analysis *977 and holding is an alternative basis for concluding that the University properly denied access to the education records of non-enrollees.
[14]
¶ 20. If the issue is approached as a matter of public policy as opposed to one of statutory interpretation, it would make no sense to conclude that the very same records of a student who applied to both UW-Oshkosh and UW-Whitewater, but enrolled at only the latter, could be obtained from the first institution but not the second. Additionally, we are aware of no public policy justification for having unsuccessful applicants for admission to University of Wisconsin schools or programs forfeit their right to the privacy of education records submitted during the application process. Therefore, even if FERPA were not to provide a specific statutory exemption for the nondisclosure of non-enrollees' education records submitted in the application process, as well as enrollees' education records, the public policy considerations which drove our decision in Rathie provide an alternate basis for denying access.
¶ 21. The University also argues in its brief in chief that, even if the records sought were not education records under federal law, they are pupil records protected from disclosure by confidentiality provisions in WIS. STAT. § 118.125.[11] Because we have resolved this question under federal law and under public policy considerations, it is not necessary for us to address the question under § 118.125. Accordingly, we reverse the order of the circuit court that required production of the records of applicants who did not enroll.
*978 4. Record Redaction.
¶ 22. Osborn contends in the cross-appeal that even if the University is not required to produce the records he seeks in their current form, WIS. STAT. § 19.36(6) requires the University to redact the applicants' records to remove personally identifiable information and then produce them.[12] The circuit court concluded that doing so would be tantamount to creating new records, which the University was not required to do.
¶ 23. WISCONSIN STAT. § 19.36(6), on which Osborn relies, states in relevant part:
SEPARATION OF INFORMATION. If a record contains information that is subject to disclosure under s. 19.35(1)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release.
We conclude that § 19.36(6) does not require the University to produce the records after redacting personally identifiable information.
[15]
¶ 24. Our analysis of a similar request in Blum controls the outcome here. Blum had sought her own *979 interim grades and those of another high school student. We examined the protection given to those records under WIS. STAT. § 118.125 and concluded that once a record has been afforded confidentiality under § 118.125 nothing in that statute suggested that the record was "exempted from the confidentiality requirement if released under a guise of anonymity." Blum, 209 Wis. 2d at 384-85, 565 N.W.2d at 144. Here, we have concluded that all of the requested records are afforded privacy protection by virtue of 20 U.S.C. § 1232g and the public policy evidenced therein; therefore, they are similarly positioned to those pupil records protected by § 118.125 which we examined in Blum. As with § 118.125, there is nothing in 20 U.S.C. § 1232g that suggests that education records are exempted from the students' right to have them remain confidential if they are released with the students' names redacted. The nature of the records remains the same. They cannot be released upon Osborn's request without the written consent of the individual applicants. Additionally, because the records Osborn seeks are not "subject to disclosure" under WIS. STAT. § 19.35(1)(a), pursuant to the exemption of WIS. STAT. § 19.36(1) as required by § 19.36(6), the University is not required to review each education record and remove part of it. Accordingly, we affirm the circuit court's decision on the cross-appeal.

CONCLUSION
¶ 25. Because we have concluded that all the records sought are education records for which 20 U.S.C. § 1232g and public policy prohibit disclosure and because the University is not required to create records to satisfy Osborn's request, we reverse the order to provide records and affirm the circuit court's decision *980 refusing to direct the University to create new records for the enrollees. Therefore, the portion of the order directing disclosure is reversed; the portion of the order directing non-disclosure which is the subject of the cross-appeal is affirmed.
By the Court.Order affirmed in part; reversed in part.
¶ 26 DYKMAN, J. (dissenting).
This is an open records case. In a unique and forceful declaration, the legislature has emphatically declared that open records are the rule in Wisconsin, and that judges should order records kept secret only in rare circumstances:
Declaration of policy. In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them.... To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.
WIS. STAT. § 19.31 (1999-2000).[1]
¶ 27. A party seeking to keep a public record secret must rebut the strong presumption of disclosure. Mayfair Chrysler-Plymouth, Inc. v. Baldarotta, 154 Wis. 2d 793, 797-98, 453 N.W.2d 922 (Ct. App. 1990) rev'd on other grounds, 162 Wis. 2d 142, 469 N.W.2d 638 (1991). This places the burden on the record custodian to show *981 why the records should be kept secret. In C.L. v. Edson, 140 Wis. 2d 168, 182, 409 N.W.2d 417 (Ct. App. 1987), we made this specific:
Here, the original parties wrongly attempt to place the burden on the newspaper to show why the documents should be opened. Once the newspaper has demonstrated a sufficient interest and has been allowed to intervene, the burden lies with the original parties to rebut the strong presumption to the contrary.
"In short, there is an absolute right to inspect a public document in the absence of specifically stated sufficient reasons to the contrary." Estates of Zimmer, 151 Wis. 2d 122, 132, 442 N.W.2d 578 (Ct. App. 1989) (internal quotations omitted).
¶ 28. What the open records law, C.L., and Estates of Zimmer require has been turned upside-down by the majority opinion. The majority requires Osborn to prove that the records at issue were created by an educational agency or institution that did not have funds available to it from the United States Department of Education. Majority at ¶ 12 n.4. But Osborn did not have to raise or prove anything. The burden was on the Board of Regents to show that both the high schools and the entities preparing ACT, SAT, LSAT and MCAT tests received funds from the United States Department of Education. Since there is no record of where those entities received their funding, the only possible conclusion is that the records custodian has failed to show that the entities enjoy the protection of 34 C.F.R. §§ 99.1 and 99.3 (2000).[2] Without that protection, the *982 Board of Regents must release the records of the non-enrolled students' high school records and ACT, SAT, LSAT and MCAT tests.
¶ 29. The majority suggests that it can place the burden on Osborn rather than on the Board of Regents because federal regulations provide that the Secretary of the Department of Education makes funds available to public high schools, public colleges and educational testing organizations. Were this the test, I would agree with the majority. And at first glance, it would seem that "funds made available" is the test. 34 C.F.R. § 99.1(a) (emphasis added) provides in part: "Except as otherwise noted in § 99.10, this part applies to an educational agency or institution to which funds have been made available under any program administered by the Secretary. ..." But there is a definition of "funds made available" found in 34 C.F.R. § 99.1(c) (emphasis added), which reads:
The Secretary considers funds to be made available to an educational agency or institution if funds under one or more of the programs referenced in paragraph (a) of this section (1) Are provided to the agency or institution by grant, cooperative agreement, contract, subgrant, or subcontract; or (2) Are provided to students attending the agency or institution and the funds may be paid to the agency or institution by those students for educational purposes....
*983 ¶ 30. Thus, what appears at first glance to be a "funds made available" test is in reality a "funds provided" test. And that is the problem which forces the majority to shift the burden in this open records case from the Board of Regents to Osborn. We know that the College Board, which administers SAT tests, receives funds from the Secretary of the Department of Education, and thus SAT records are protected under FERPA. The record is silent as to whether the Secretary of the Department of Education provided funds to all of the other educational agencies and institutions whose records Osborn requested. It is the Board of Regents' obligation to show that its records should be kept secret. It has failed to do so. The result should be an affirmation of the trial court's conclusion recognizing that fact.
¶ 31. But I also disagree with other conclusions in the majority opinion. By enacting FERPA, Congress gave students protection from the dissemination of their student records. However, Congress included an exception in its definition of "student." A student does not include a person who has not been in attendance at an agency or institution which maintains the student's education records. 20 U.S.C. § 1232g(a)(6).
¶ 32. Somehow, the majority puts this exception to the definition of "student" together with another definition of "student" found in a regulation promulgated by the Secretary of the Department of Education, and comes up with a definition of "student" as "those individuals who are or who have been in attendance at any educational agency or institution." Majority at ¶ 15. In my view, this includes most inhabitants of the United States, with the possible exception of totally home-schooled persons. I cannot accept this broad definition as correct when Congress has specifically *984 excepted from the definition of "student," persons who have not been in attendance at the institution maintaining the student's education records.
¶ 33. Perhaps the majority feels that the Secretary of the Department of Education could somehow massage 20 U.S.C. § 1232g(a)(6) and remove Congress's specific exemptions from it. But this is not the federal rule and it is not the rule in Wisconsin. See Koshland v. Helvering, 298 U.S. 441, 447 (1936), Dierson v. Chicago Car Exchange, 110 F.3d 481, 486 (7th Cir. 1997), Oneida County v. Converse, 180 Wis. 2d 120, 125, 508 N.W.2d 416 (1993). There is nothing ambiguous about the phrase "but does not include a person who has not been in attendance at such agency or institution." There is no way to read that phrase and conclude that Congress really intended to include within the definition of "student" a person who has not been in attendance at an institution.
¶ 34. The majority suggests that ambiguity exists because the statute does not distinguish between a person's past attendance and present attendance at an institution. I agree that the statute does not make that distinction, but the distinction is irrelevant. It just does not matter for FERPA's purposes whether a person who never attended an institution did not attend in the past or does not attend now. In either case, the non-student was or is a non-attendee, and therefore not entitled to FERPA protection. "Has not been in attendance" is a phrase contemplating the past. The past begins when an institution receives an open records request, and extends backwards in time. Persons who do not attend and have not attended an institution are not students at the institution whether one is discussing law, FERPA or common sense. And whether the person whose records are requested has been in attendance at the *985 institution for seven years or one day is likewise irrelevant. Either way, the student "has been in attendance" at the institution and is entitled to FERPA protection.
¶ 35. Having concluded that Congress intended an exception for records of non-students, I also conclude that the public policy expressed in FERPA, including the exception I have already discussed, is that of a limited right to privacy. The exception is therefore also the policy to which Rathie v. Northeastern Wis. Tech. Inst. 142 Wis. 2d 685, 690, 419 N.W.2d 296 (Ct. App. 1987), deferred. The public policy described in Rathie was not public policy as determined by three appellate judges. Instead, it was the public policy the court of appeals found in FERPA relating to students who "were in attendance at" Northeastern Wisconsin Technical Institute. The supreme court has said as much. In Rice v. City of Oshkosh, 148 Wis. 2d 78, 435 N.W.2d 252 (1989), the court quoted Hengel v. Hengel, 122 Wis. 2d 737, 742, 365 N.W.2d 16 (Ct. App. 1985) and Borgnis v. Falk Co., 147 Wis. 327, 351, 133 N.W. 209 (1911): "When acting within constitutional limitations, the Legislature settles and declares the public policy of a state, and not the court." Rice, 148 Wis. 2d at 91.
¶ 36. The majority mistakenly concludes that Rathie holds that the public policy of FERPA is to make all student records confidential, whether or not the student is enrolled at the institution. It ignores the fact I conclude is dispositive: the records sought from the institution involved in Rathie were records of students enrolled there. Of course those records were protected by FERPA. But that in no way is a holding that records falling within the exception to FERPA's protection are also protected by FERPA. Appellate courts usually do not write opinions about fact situations having nothing *986 to do with the case at hand. The majority is really substituting its own view of public policy for that of Congress, the very thing disapproved by Rice, Hengel and Borgnis.
¶ 37. I agree with the majority's conclusion that it will not address the Board of Regents' assertion that WIS. STAT. § 118.125 protects the sought-after records from disclosure. The Board of Regents did not use this statute as a reason for denying access to the non-students' records. The court explained this in Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979):
The duty of the custodian is to specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are sufficient. It is not the trial court's or this court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the custodian. If the custodian gives no reasons or gives insufficient reasons for with-holding a public record, a writ of mandamus compelling the production of the records must issue.
But I disagree with the majority's conclusion that the Board of Regents may not be compelled to redact personally identifiable information from the records sought. WISCONSIN STAT. § 19.36(6) requires the Board of Regents to separate information subject to disclosure from information not subject to disclosure, and to then disclose the former. I need not consider whether Osborn is entitled to what he describes as "personally identifiable information" because he does not seek that information. Nor do I consider whether the redacted records will be of use to Osborn. The latter is not a matter covered by Wisconsin's open records law. See Kraemer Brothers, Inc. v. Dane County, 229 Wis. 2d 86, 102, 599 N.W.2d 75 (Ct. App. 1999).
*987 ¶ 38. Judges are required to make a public policy determination by balancing the policy considerations for and against disclosure. Breier, 89 Wis. 2d at 437-38. There is a strong public policy in favor of openness. Breier, 89 Wis. 2d at 439; WIS. STAT. § 19.31. Whether the Board of Regents does or does not use considerations of race, ethnicity, heritage and gender in admitting students to the University of Wisconsin is an important issue. It is a controversial issue, with persons of good faith asserting competing conclusions as to whether the University should or should not consider those factors. But to me, this is not an issue which should be kept secret from the people of the State of Wisconsin. Whatever the University does or does not do should be subjected to the sifting and winnowing process of which the University is rightfully proud. I find no policy favoring the non-disclosure of the type of information Osborn seeks. Accordingly, adhering to the requirement of Breier that I weigh the competing interests for and against disclosure, I conclude that public policy favors disclosure. Accordingly, I respectfully dissent from the majority's conclusion to the contrary.
NOTES
[] Petition to review granted 11-27-01.
[1] All references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise noted. Although the requests for information were made during 1998 and 1999 for applicants from 1993 to 1999, the current statutes are used for this opinion because no changes were made in the relevant provisions that would affect our decision.
[2] The applicants can be separated into two classes: those who did enroll and those who did not. Of the latter class, some were granted the opportunity to enroll but chose not to do so, and others were denied that opportunity.
[3] The records sought and refused were alleged to contain standardized test scores, grade point averages and high school or undergraduate class rank of each individual applicant. The requests also sought each applicant's extracurricular activities, preferred undergraduate areas of study, state of residence, location of residence within the state, race, sex and whether the applicant had a parent or another relative who was a graduate of the school for which admission was sought. Additionally, Osborn requested enrollees' first-year grade point averages, whether any enrollees were classified as remedial students, whether any enrollees were placed on academic probation the first year and whether the grade point averages of any enrolled applicants were "adjusted."
[4] Osborn did not argue, either before the circuit court or this court, that any record at issue was created by an educational agency or institution that did not have funds made available from the United States Department of Education and therefore would not be subject to FERPA. We assume it was not raised because it is not a contested issue. However, because this issue is the foundation of the dissent, we note that the Secretary does make funds available to public high schools and public colleges as well as to educational testing organizations. See 20 U.S.C. § 1400 et seq.; 42 U.S.C. §§ 2751-2756b; 34 C.F.R. §§ 673.1 and 675.1; 20 U.S.C. §§ 1070a-11 et seq.; 20 U.S.C. § 1070e; and 66 Fed. Reg. 20,440, 20,441 (Apr. 23, 2001). Additionally, the College Board's annual report shows funds received from the Department of Education. See http://www.collegeboard.org/pubaff/annrep00/annrep00.pfd.
[5] We cannot analyze the access and notice rights available to parents and students under the Act without facts in addition to those presented in this record.
[6] An older version of 34 C.F.R. § 99.3 provided the definition on which the circuit court relied:

The term does not include an individual who has not been in attendance at an educational agency or institution. A person who has applied for admission to, but has never been in attendance at a component unit of an institution of postsecondary education (such as the various colleges or schools which comprise a university), even if that individual is or has been in attendance at another component unit of that institution of postsecondary education, is not considered to be a student with respect to the component to which an application for admission has been made.
The definition applicable to the records sought here became effective forty-five days after its publication in 53 Fed. Reg. 11,942 (Apr. 11, 1988).
[7] The dissent asserts, "There is nothing ambiguous about the phrase `but does not include a person who has not been in attendance at such agency or institution.' There is no way to read that phrase and conclude that Congress really intended to include within the definition of `student' a person who has not been in attendance at an institution." We respectfully disagree. Whether the attendance spoken of in the statute is one that has occurred in the past or is presently occurring when the request for records is made is not unambiguously addressed by the statute. However, it is addressed by the Secretary of the Department of Education, who was designated by Congress to implement the Act.
[8] Under 34 C.F.R. § 99.1, an "educational agency" is included within FERPA if it "provides educational services" or "performs service functions for, public elementary, or secondary schools or post secondary institutions." This definition is broad enough to extend to the entities that prepare and administer standardized admissions tests such as the ACT, SAT, LSAT, and MCAT.
[9] Section 99.33 provides in relevant part:

(a)(1) An educational agency or institution may disclose personally identifiable information from an education record only on the condition that the party to whom the information is disclosed will not disclose the information to any other party without the prior consent of the parent or eligible student.
There are certain exceptions to this rule, but none that bear on the questions we must decide in this appeal. See, e.g., 34 C.F.R. § 99.31.
[10] Many of the cases cited to us, or which our research uncovered, were based on the obsolete definition of "student" cited above or upon incomplete research. See Tarka v. Franklin, 891 F.2d 102 (5th Cir. 1989) (holding 20 U.S.C. § 1232g provides no private right of action and employs an outdated definition of "student"); Norwood v. Slammons, 788 F.Supp. 1020 (W.D. Ark. 1991) (holding that requests for records of another must be denied and relying on the dicta in Tarka without even mentioning the C.F.R.); Lawson v. Edwardsburg Pub. Sch., No. 1:90-CV-68, 1990 WL 359811 (W.D. Mich. Nov. 14, 1990) (holding that a complaint which alleged that the school board had wrongfully said that Lawson had commenced a lawsuit against it did not state a claim under the Act); Lieber v. Board of Trs. of S. Illinois Univ., 680 N.E.2d 374 (Ill. 1997) (holding individuals who had been granted the privilege to enroll were not students between the time such privilege was granted and classes began, without any reference to the C.F.R. and the Secretary's implementation of the Act); and Carl v. Board of Regents of Univ. of Oklahoma, 577 P.2d 912 (Okla. 1978) (relying on a definition of "student" that does not apply to the records sought by Osborn).
[11] This was not a reason given by the University in its response to Osborn.
[12] Osborn repeatedly asserts that he seeks no "personally identifiable information," yet he ties his requests to each individual applicant rather than requesting a range of information for a group of applicants. For example, he requests, "The math and verbal scores achieved on the Scholastic Aptitude Test ("SAT") and the composite scores achieved on the American College Testing Assessment ("ACT") by each American Indian, Asian, black, Hispanic, and white, male freshman" (emphasis added).
[1] All references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise noted.
[2] The Board of Regents gave FERPA as a reason it would not release SAT test results, but did not prove at trial that the College Board received funds from the Department of Education. The majority has apparently taken judicial notice of the College Board's annual report. Although raising an issue for the first time on appeal is discouraged, Vollmer v. Luety, 156 Wis. 2d 1, 10-11, 456 N.W.2d 797 (1990), we may do so. Bartus v. DHSS, 176 Wis. 2d 1063, 1071, 501 N.W.2d 419 (1993). Therefore, if I agreed with the majority's interpretation of "student" under 20 U.S.C. § 1232g(a)(6), I would also agree with the majority that the College Board test results may be kept secret. But trying issues for the first time on appeal is inappropriate, and puts the court in the position of litigating for a party.