J. Marshall OSBORN and Center for Equal Opportunity, Plaintiffs-Respondents-Cross-Appellants-Petitioners,

v.

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Defendant-Appellant-Cross-Respondent.

Supreme Court

*No. 00–2861. Oral argument April 30, 2002.—Decided July 2, 2002.*

2002 WI 83

(Also reported in 647 N.W.2d 158.)

For the defendant-appellant-cross respondent the cause was argued by *Alan Lee,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

An amicus curiae brief was filed by *Michael D. Dean* and *Dean & McKoy, S.C.,* Waukesha, and *Lucy A. Dalglish, Gregg P. Leslie,* and *Youngmee Moon,* Arlington, Virginia, on behalf of the Reporters Committee for Freedom of the Press and Student Press Law Center.

¶ 1. N. PATRICK CROOKS, J. In this case, we review a court of appeals' decision, *Osborn v. Board of*

*Regents of the University of Wisconsin System*, 2001 WI App 209, 247 Wis. 2d 957, 634 N.W.2d 563, regarding whether the Board of Regents of the University of Wisconsin System (hereinafter the University) must provide documents in response to open records requests by J. Marshall Osborn and the Center for Equal Opportunity (hereinafter referred to collectively as Osborn). In 1998 and 1999, Osborn made several open record requests to the University, seeking records of applicants to its campuses, as well as the University of Wisconsin Law School (Law School) and the University of Wisconsin Medical School (Medical School). The University responded by producing some of the requested records, but largely denied Osborn's requests relating to information in student application records. In an effort to compel the University to provide the requested records, Osborn filed a mandamus action. The circuit court concluded that the University was required to grant the requests relating to applicants who had not enrolled at the University, but denied Osborn's requests relating to those who matriculated, regardless of Osborn's request that personally identifiable information be redacted. The court also concluded, however, that even for those applicants who did not matriculate, the University was not required to create new records in order to comply with Osborn's request.

¶ 2. Both parties appealed and the court of appeals affirmed in part and reversed in part. The court of appeals concluded that all records sought—including records of both those who matriculated and those who did not—were prohibited from disclosure under the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g (2000), as amended (hereinafter FERPA

or the Act)[1]. In addition, the court affirmed the circuit court's decision refusing to require the University to create new records to comply with the open records request.

¶ 3. On review, we reverse the court of appeals' decision. We conclude that Osborn is not requesting personally identifiable information; therefore, FERPA does not prohibit disclosure of the requested information in this case. We then balance the public policy interests involved and conclude that because the request does not seek personally identifiable information, there is no overriding public policy interest in keeping the requested records confidential. Further, we conclude that based on the statutory requirement to provide information subject to disclosure and delete information not subject to disclosure as stated in Wis. Stat. § 19.36(6) (1999–2000),[2] the University must redact records, where necessary, in order to comply with Osborn's open records requests. We also note that the University is entitled to charge a fee for the actual, necessary, and direct cost of complying with these open record requests.

I

¶ 4. The relevant facts are not in dispute. In 1998 and 1999, Osborn requested public records from the University in order to analyze and compare data regarding the admissions policies and practices of public institutions of professional education. On April 2, 1998, in nearly identical letters, Osborn first requested public

---

[1] Unless otherwise noted, subsequent references to 20 U.S.C. § 1232g are to the 2000 version.

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

records from several of the University's campuses[3] relating to applications for undergraduate admission for the years 1993 through 1997. The letter enumerated 27 public records requests seeking information in student applications, including, for example, high school grade point averages, SAT scores, race, socio-economic background, and class rank. Osborn later made virtually the same public records request for the same years to the Law School on October 19, 1999, and to the Medical School on November 10, 1999.[4]

¶ 5. On June 15, 1998, in response to the original requests to the University's undergraduate campuses, the University provided several hundred pages of documents in response to requests numbered 1 through 5 and 16 through 27. The University also responded to some of those requests by claiming that it does not maintain records of the type requested. With regard to Osborn's requests numbered 6 through 15,[5] focusing largely on test scores, grade point averages, and class

---

[3] Specifically, Osborn sent the open records request to the following: UW LaCrosse, UW Madison, UW Milwaukee, UW Oshkosh, UW Parkside, UW Platteville, UW River Falls, UW Stevens Point, UW Stout, UW Superior, UW Whitewater, and UW Law School Madison.

[4] Osborn's records request to the Law School enumerated 28 requests and the request to the Medical School enumerated 31 requests. Again, the open records requests focused on student applications, including, for example, information regarding race, LSAT (Law School Admissions Test) or MCAT (Medical College Admissions Test) scores, undergraduate class rank, undergraduate grade point average, and socio-economic background. The requests to the Law School and Medical School were subsequently clarified by letters dated January 3, 2000.

[5] Osborn's requests numbered 6 through 15 asked for the following information:

rank by race and sex, the University denied the requests, claiming that such personally identifiable infor-

6. The math and verbal scores achieved on the Scholastic Aptitude Test ("SAT") and the composite scores achieved on the American College Testing Assessment ("ACT") by each American Indian, Asian, black, Hispanic, and white, male freshman.

7. The math and verbal scores achieved on the SAT, and the composite scores achieved on the ACT, by each American Indian, Asian, black, Hispanic, and white, male applicant who was denied admission.

8. The math and verbal scores achieved on the SAT, and the composite scores achieved on the ACT, by each American Indian, Asian, black, Hispanic, and white, male applicant who was accepted, but who did not enroll.

9. The math and verbal scores achieved on the SAT, and the composite scores achieved on the ACT, by each American Indian, Asian, black, Hispanic, and white, female freshman.

10. The math and verbal scores achieved on the SAT, and the composite scores achieved on the ACT, by each American Indian, Asian, black, Hispanic, and white, female applicant who was denied admission.

11. The math and verbal scores achieved on the SAT, and the composite scores achieved on the ACT, by each American Indian, Asian, black, Hispanic, and white, female applicant who was accepted, but who did not enroll.

12. The high-school rank for each American Indian, Asian, black, Hispanic, and white, male freshman, rejected male applicant, and accepted male applicant who did not enroll.

13. The high-school rank for each American Indian, Asian, black, Hispanic, and white, female freshman, rejected female applicant, and accepted female applicant who did not enroll.

14. The high-school grade point average ("GPA") for each American Indian, Asian, black, Hispanic, and white, male freshman, rejected male applicant, and accepted male applicant who did not enroll.

15. The GPA for each American Indian, Asian, black, Hispanic, and white, female freshman, rejected female applicant, and accepted female applicant who did not enroll.

274

mation is prohibited from disclosure under FERPA, and because the public interest in disclosure is outweighed by the public interest in non-disclosure. Moreover, the University claimed that the information sought by those requests is only maintained in individual student education records and that extracting the information requested would amount to creating a new record, which, it argued, is not required under the open records law.

¶ 6. After receiving the University's denial, Osborn attempted to clarify the requests and asked the University to reconsider its decision in a subsequent letter, dated June 22, 1998. Specifically, Osborn stated in part:

> [I]t was my expectation and intention in requesting this information that the various institutions would comply fully with the provisions of . . . Family Educational Rights and Privacy Act . . . by redacting "private information." I did not explicitly specify that personally identifiable information should be in all cases redacted because this is unquestionably required by that provision.

The University responded to Osborn's letter by maintaining its position that education records are not subject to open records requests and that the University has no duty to redact or create new records.

¶ 7. In response to Osborn's requests to the Law School and the Medical School, the University similarly provided some records, but denied several of the requests, including those for test scores, grade point averages, and class rank by race or sex.[6] Again, the University claimed that the requests asked for person-

---

[6] Osborn's requests to the Law School numbered 8 through 19 stated:

8. (a) Whether the applicant is male or female.

 (b) Whether the applicant was accepted and subsequently enrolled; was accepted but did not subsequently enroll; or was rejected or deferred.

9. Whether the applicant is resident or non-resident of the State.

10. Whether the applicant is American Indian, Asian, Non-Hispanic black, Hispanic, or Non-Hispanic white.

11. (a) The first-year law school grade point average for the enrolled applicant.

 (b) Whether the applicant is classified as a remedial student.

 (c) Whether the applicant was eligible to return to the law school for a second year of study or was placed on academic probation for the second year or any part thereof.

12. The geographical origin within the State of the applicant.

13. (a) The particular area of academic interest or undergraduate major of the applicant.

 (b) The extracurricular activity of the applicant.

14. The scores achieved on the Law School Scholastic Aptitude Test ("LSAT") by each applicant and dates taken.

15. The undergraduate rank for each applicant.

16. The undergraduate grade point average ("GPA") used by the Law School for each applicant.

17. If the Law School adjusts or weighs the GPA of any applicant to take into account: (a) the quality of the undergraduate institution and/or the quality of the undergraduate courses; (b) the professional-school level of undergraduate courses taken through any form of dual enrollment; (c) the most recent academic performance; (d) performance in specific law school preparatory course work; or (e) any other factor, then with respect to each such applicant —

 (i) The un-weighted, unadjusted GPA;

 (ii) The form and amount of the adjustment factor; and

276

policy. The University also repeated its argument that it is not required to create new records by extracting or redacting information.

 (iii) The basis for the form and amount of the adjustment factor.

18. The native language of the applicant, if other than English.

19. If the Law School weighed the socio-economic, racial, ethnic, or similar background of applicants to the first-year class as a factor in the admission process, please provide the records containing any discussion of how these factors are considered and any information which might thereby affect the admission of the applicant, including the family income for each applicant.

Osborn's requests to the Medical School numbered 9 through 17, and 22, stated:

9. (a) Whether the applicant is male or female.

 (b) Whether the applicant was accepted and subsequently enrolled; was accepted but did not subsequently enroll; was rejected, or was deferred.

10. Whether the applicant is resident or non-resident of the state.

11. Whether the applicant is American Indian, Asian, black, Hispanic, or white.

12. (a) The first-year medical school grade point average for the enrolled applicant.

 (b) The results of the United States Medical Licensing Examination Step 1, for the enrolled applicant.

 (c) Whether the applicant is classified as a remedial student.

13. The geographical origin within the state of the applicant.

14. (a) The particular areas of undergraduate academic interest or major of the applicant.

 (b) The extracurricular activity of the applicant.

15. The scores achieved on the MCAT by each applicant.

16. The undergraduate rank for each applicant.

277

¶ 8. On April 4, 2000,[7] Osborn filed a complaint in Dane County Circuit Court, seeking a writ of mandamus[8] to compel the University to produce the requested documents under Wisconsin's Open Records Law, Wis. Stat. § 19.35.[9] The University responded by filing a motion to dismiss. On July 19, 2000, the circuit court, the Honorable Stuart A. Schwartz, presiding, granted in part and denied in part the University's motion. With

17. The undergraduate GPA used by the Medical School for each applicant.

22. If the Medical School weighed the socio-economic, or other background of applicants to the first-year class as a factor in the admission process, the records containing any information which might thereby affect the admission of the applicant, including the family income for each applicant.

[7] Osborn originally filed the complaint on December 17, 1999, but later filed an amended complaint on April 4, 2000. The amended complaint substituted the Board of Regents as defendant, removing the previously named defendant, Elizabeth Rindskopf Parker, General Counsel of the University of Wisconsin System, and added allegations.

[8] Osborn filed the writ of mandamus as provided in Wis. Stat. § 19.37(1)(a), which states in relevant part:

If an authority withholds a record or part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may pursue either, or both, of the alternatives under pars. (a) and (b).

(a) The requester may bring an action for mandamus asking a court to order release of the record.

[9] Wisconsin Stat. § 19.35(1) is the statutory section granting a requester the right to inspect and copy public records. "Except as otherwise provided by law, any requester has a right to inspect any record." Wis. Stat. § 19.35(1)(a). Moreover, "Except as otherwise provided by law, any requester has a right to inspect a record and to make or receive a copy of a record which appears in written form." Wis. Stat. § 19.35(1)(b).

regard to information relating to applicants who matriculated, the court denied the requests by concluding that the records were prohibited from disclosure by FERPA. In contrast, the court granted Osborn's request for records of applicants who had not enrolled at the University because such records are not protected as education records. The court also concluded, however, that the requested information was found only in the individual files of applicants and thus, would require the University to create a new record, which is not required under the open records law. The court concluded that in order to obtain information regarding applicants who did not matriculate, it was Osborn's responsibility to compile the desired data by viewing each individual file.

¶ 9. The University appealed and Osborn cross-appealed. In a published decision, the Court of Appeals, District IV, affirmed in part and reversed in part. *Osborn,* 2001 WI App 209, ¶ 25. First, the court concluded that the University's objection based on FERPA is an objection with the requisite degree of specificity. *Id.* at ¶ 10. Then, after looking at the definitions of "education records" and "student" in the Code of Federal Regulations, the court concluded that all records requested by Osborn are specifically exempted from disclosure under FERPA. *Id.* at ¶ 15. The court also concluded that even if records of the non-enrollees were not specifically protected by FERPA, disclosure was properly denied based on the public policy interest in preserving the privacy of student records. *Id.* at ¶ 19. The court declined to address the impact of Wis. Stat. § 118.125 because the case was resolved under federal law. *Id.* at ¶ 21. Finally, with regard to the University's obligation to redact, the court concluded that § 19.36(6) does not require the University to produce the records

after redacting personally identifiable information. The court held that nothing in FERPA suggests that education records are subject to release, even if a student's name is redacted. The court further concluded that because the records are not subject to disclosure under § 19.35, "the University is not required to review each education record and remove part of it." *Id.* at ¶ 24.

¶ 10. Judge Dykman dissented. He noted the strong presumption of disclosure of public records in Wisconsin and concluded that public policy favors disclosure of the information Osborn requested. He indicated that it is the University's burden to show that the records should not be disclosed and that it has failed to do so in this case. *Id.* at ¶ 30. Judge Dykman then rejected the majority opinion's broad definition of "student" and concluded that Congress intended a limited exception for the records of non-students. *Id.* at ¶ 35. Finally, he disagreed with the majority opinion's decision regarding the University's obligation to redact.

> Wis. Stat. § 19.36(6) requires the Board of Regents to separate information subject to disclosure from information not subject to disclosure, and to then disclose the former. I need not consider whether Osborn is entitled to what he describes as "personally identifiable information" because he does not seek that information.

*Id.* at ¶ 37.

¶ 11. We subsequently granted Osborn's petition for review.

## II

¶ 12. In this case we examine the custodian's reasons for denying the open records requests and

determine the scope of protection from disclosure for education records under FERPA and the open records law, Wis. Stat. § 19.35. Statutory interpretation and application of the open records law to undisputed facts present questions of law that we review de novo, benefiting, however, from the analyses of the circuit court and the court of appeals. *Nichols v. Bennett,* 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996); *Rathie v. N.E. Wis. Tech. Inst.,* 142 Wis. 2d 685, 687, 419 N.W.2d 296 (Ct. App. 1987).

¶ 13. In Wisconsin, we have a presumption of open access to public records, which is reflected in both our statutes and our case law.

> [I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. . . . The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Wis. Stat. § 19.31; *see also Linzmeyer v. Forcey,* 2002 WI 84, ¶ 15, 254 Wis. 2d 306, 646 N.W.2d 811 (recognizing the presumption that all public records should be open to the public); *Mayfair Chrysler-Plymouth v. Baldarotta,* 162 Wis. 2d 142, 155, 469 N.W.2d 638 (1991) (discussing presumption of open access to public records as having been long recognized in Wisconsin); *Hathaway v. Green Bay Sch. Dist.,* 116 Wis. 2d 388, 392, 342 N.W.2d 682 (1984) ("Public policy and public interest favor the public's right to inspect public records."); *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 426–427, 279 N.W.2d 179 (1979) (recognizing the legislative presumption that "where a public record is involved, the denial of inspection is contrary to the public policy and the public interest"). The open records law, Wis. Stat. § 19.35,

provides a requester with the procedure to exercise the right to inspect a public record and/or to make or receive a copy of a public record that appears in written form. Wis. Stat. § 19.35(1)(a) and (b).

¶ 14. The right to inspect public records, however, is not absolute. In certain circumstances, a custodian should deny a request to inspect public records. Access should be denied where the legislature or the court has predetermined that the public interest in keeping a public record confidential outweighs the public's right to have access to the documents. "Thus, the general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." *Hathaway*, 116 Wis. 2d at 397.

¶ 15. After receiving an open records request, a custodian should turn to the statutes and to this court's established procedural standards to determine whether disclosure of the requested public records is proper. First, the custodian must determine whether any of the exceptions to open access apply, and then "weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection." *Breier*, 89 Wis. 2d at 427. If the custodian decides that the open records request should be denied, then the custodian must state the specific policy reasons relied on to make that determination. *Mayfair*, 162 Wis. 2d at 157; *Breier*, 89 Wis. 2d at 427; *see also* Wis. Stat. § 19.35(4). Further, pursuant to Wis. Stat. § 19.35(4)(b),

if the custodian "denies a written request in whole or in part, the requester shall receive from the authority a written statement of the reasons for denying the written request."

■■■

¶ 16. In reviewing a mandamus action seeking to compel the custodian to disclose the requested public records, we first examine the sufficiency of the custodian's stated reasons for denying the request. *Rathie*, 142 Wis. 2d at 687. The threshold question is whether the custodian stated legally specific reasons for denying the open records request. *Mayfair*, 162 Wis. 2d at 158. It is not this court's role to hypothesize or consider reasons to deny the request that were not asserted by the custodian. *Breier*, 89 Wis. 2d 417. If the custodian states insufficient reasons for denying access, then the writ of mandamus compelling disclosure must issue. *Oshkosh Northwestern Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 486, 373 N.W.2d 459 (Ct. App. 1985).

¶ 17. Here, the University denied Osborn's open records requests by stating: (1) disclosure of the requested information would violate FERPA, (2) the public interest in the disclosure of the requested records is outweighed by the public interest in non-disclosure, and (3) complying with the request would essentially require the University to create a new record, which is not required under the open records law. The parties here do not dispute that the University's reasons for denying Osborn's requests satisfy the custodian's duty to state specifically the policy reasons for denial. *See Chvala v. Bubolz*, 204 Wis. 2d 82, 87–88, 552 N.W.2d 892 (Ct. App. 1996) (concluding that there are some statutes, including FERPA, "that leave no room for explanation or discretion when applied to

an open records case"). We conclude that the University stated legally specific reasons for denying Osborn's requests, thus, we review each of the University's stated reasons in turn.

## III

¶ 18. We begin by examining the scope of FERPA and whether the University correctly relied on the Act as a basis for denying Osborn's requests. FERPA conditions the availability of funds to educational agencies and institutions based on their policies and practices regarding open access to education records. Specifically, the Act provides in relevant part:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of *education records (or personally identifiable information contained therein* other than directory information . . . ) of students without the written consent of their parents to any individual, agency, or organization. . . .

20 U.S.C. § 1232g(b)(1) (emphasis added).[10] Before discussing the applicability of FERPA to the open records requests at issue here, we note that, on its face, the Act does not prohibit disclosure of the records Osborn has requested from the University. In fact, FERPA does not prohibit disclosure of any documents. Rather, FERPA operates to deprive an educational agency or institution

---

[10] The United States Supreme Court recently addressed FERPA and held that the Act's nondisclosure provisions fail to confer individual enforceable rights under 42 U.S.C. § 1983. *Gonzaga University v. Doe*, 536 U.S. 273, 122 S. Ct. 2268 (June 20, 2002). We have reviewed the Court's decision and it has no effect on our ruling here.

284

of funds if "education records (or personally identifiable information contained therein . . . )" are disclosed without consent. 20 U.S.C. § 1232g(b)(1). We do not question the importance of, and the University's interest in, receiving funding; therefore, we interpret FERPA here according to what records or information the University can disclose without jeopardizing its eligibility for funding.

¶ 19. The dispute here is to what extent, if any, FERPA protects from disclosure the records Osborn has requested from the University. We note that this issue, the scope of protection for records under FERPA, is one of first impression in Wisconsin.

¶ 20. In denying Osborn's open records requests, the University relied on FERPA, claiming that the requested records are "education records" which, under FERPA and Wisconsin's open records law, are excepted from the general rule of inspection. The University interprets FERPA to protect all information contained in education records, including the information requested here. Specifically, the University argues that student records include records of applicants who subsequently attend the University, as well as records of applicants who do not matriculate. The University seems to contend that all student records contain only personal information, and not any information that is subject to disclosure because of an open records request. According to the University, because Osborn's requests are for information regarding each applicant for enrollment, on their face, the requests are for personally identifiable information protected from disclosure by FERPA.

¶ 21. In contrast, Osborn argues that FERPA prohibits disclosure of information contained in education records in only two situations, neither of which is

present here. First, he argues that FERPA prohibits disclosure of an entire education record. Second, FERPA prohibits disclosure of personally identifiable information in an education record. Osborn claims that because the open records requests here do not ask for entire education records, nor do the requests ask for personally identifiable information, the Act does not prohibit the University from complying with his open records requests. Specifically, Osborn looks to the language of FERPA and argues that the parenthetical portion of the Act, "(or personally identifiable information contained therein other than directory information . . . )," demonstrates that some of the information in an education record may be released. Osborn claims that the purpose of the parenthetical is to explain to educational agencies and institutions that the information they release must not be capable of identifying a particular student. According to Osborn, therefore, FERPA does not prohibit the release of all information in an education record and, furthermore, does not prohibit the release of the information requested here.

¶ 22. We conclude, based on the plain language of FERPA, that the Act prohibits non-consensual disclosure of personally identifiable information contained within education records.[11] The plain language of

---

[11] We do not address Osborn's interpretation of FERPA as prohibiting disclosure of education records "in their entirety" because it is unnecessary to do so. We focus on the scope of FERPA regarding personally identifiable information because once personally identifiable information is deleted, by definition, a record is no longer an education record since it is no longer directly related to a student. *See* 20 U.S.C. 1232g(a)(4)(A) (defining education records in part as a records which "contain information directly related to a student").

FERPA protects from disclosure "education records (or personally identifiable information contained therein other than directory information . . . )." 20 U.S.C. § 1232g(b)(1). Based on this unambiguous language, it is clear that FERPA protects the disclosure of education records. It is also clear, however, that FERPA does not prohibit disclosure of all information contained in such records. The Act itself indicates that directory information, which is part of an education record, is subject to release. Furthermore, as Osborn notes, the parenthetical referring to personally identifiable information would be meaningless if FERPA prohibited disclosure of all information in education records. When interpreting a statute, we attempt to give effect to every word, so as not to render any portion of the statute superfluous. *Landis v. Physicians Ins. Co.*, 2001 WI 86, ¶ 16, 245 Wis. 2d 1, 628 N.W.2d 893. We, therefore, interpret FERPA by giving effect to the parenthetical reference to personally identifiable information. Accordingly, we conclude that FERPA prohibits non-consensual disclosure of personally identifiable information contained in education records.

██

¶ 23. In order to determine if the requested information is personally identifiable and subject to protection from disclosure, we look to the regulations adopted to implement FERPA. Specifically, 34 C.F.R. § 99.3 (2000) defines personally identifiable information as follows:

> Personally identifiable information includes, but is not limited to:
>
> (a) The student's name;
>
> (b) The name of the student's parent or other family member;

■■■■■■■■■

(c) The address of the student or student's family;

(d) A personal identifier, such as the student's social security number or student number;

(e) A list of personal characteristics that would make the student's identity easily traceable; or

(f) Other information that would make the student's identity easily traceable.

Based on this definition, we conclude that only if the open records request seeks information that would make a student's identity traceable, may a custodian rely on FERPA to deny the request on the basis that it seeks personally identifiable information.

¶ 24. While we base our interpretation of FERPA on the plain language of the Act itself, we note that our interpretation of FERPA here is consistent with Wisconsin's prior interpretation of FERPA in *Rathie v. Northeastern Wisconsin Technical Institute*, 142 Wis. 2d 685, 419 N.W.2d 296 (Ct. App. 1987).[12] Although *Rathie*

---

[12] Our interpretation of FERPA is also consistent with interpretations of the Act in other jurisdictions. *See Tarka v. Franklin*, 891 F.2d 102, 104 (5th Cir. 1989) ("A student's or parent's consent is required where personally identifiable information from the educational records of a student is to be disclosed."); *Doe v. Knox County Bd. of Educ.*, 918 F. Supp. 181, 184 (E.D. Ky. 1996) (applying FERPA by focusing on whether the information disclosed was personally identifiable); *Norwood v. Slammons*, 788 F. Supp. 1020, 1026 (W.D. Ark. 1991) ("Before personally identifiable information from the education records of a student may be disclosed, the consent of the student or parent must be obtained."); *Mattie T. v. Johnston*, 74 F.R.D. 498, 501 (N.D. Miss. 1976) (holding that FERPA does not apply when a subpoena allows the custodian to delete or cover up personally identifiable information in the requested documents); *Human Rights Auth. of the State of Ill. Guardianship & Advocacy*

did not address, directly, the scope of protection under FERPA, we note that our interpretation of FERPA here is consistent with that opinion. In *Rathie*, the court of appeals addressed FERPA in the context of an open records request for attendance and grade forms, including the name, social security number, telephone number, class attendance record, and final grade of each student enrolled in courses at the Northeastern Wisconsin Technical Institute (NWTI) (now Northeastern Wisconsin Technical College (NWTC)). Based on the language and purpose of FERPA, the court held that the custodian of the requested attendance and grade records properly denied the open records request. *Id.* at 695.

¶ 25. The court first examined the language of FERPA itself, and also looked at regulations adopted to protect and enforce students' right to privacy, including the definition of personally identifiable information in 34 C.F.R. § 99.3. *Id.* at 690–691. The court did not interpret FERPA as prohibiting disclosure of all information in education records. To the contrary, the court relied on the same personally identifiable information distinction we rely on here.

> The Act does provide that certain personally identifiable information may be released without written consent under certain conditions. Specific categories of personally identifiable information may be designated as "directory information," for example . . . .

*Comm'n v. Miller,* 464 N.E.2d 833, 836 (Ill. App. Ct. 1984) (comparing Illinois Student Records Act to FERPA as "affect[ing] only records containing personally identifiable information"); *Kryston v. Bd. of Educ. of the E. Ramapo Cent. Sch. Dist.,* 77 A.D. 2d 896, 897 (N.Y. App. Div. 1980) (holding that release of "scrambled" test scores would not constitute disclosure of personally identifiable information under FERPA).

*Id.* at 692. The court concluded, however, that NWTI had not designated categories of personally identifiable information as directory information, and that the requested information was personally identifiable information which is protected by FERPA. *Id.* at 691, 692.

¶ 26. Next, the court in *Rathie* examined the purpose of FERPA. Looking to the congressional record, the court quoted the purpose of the Act as asserted by its sponsors.

> The purpose of the Act is two-fold—to assure parents of students, and students themselves if they are over the age of 18 or attending an institution or postsecondary education, access to their education records *and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent.*

*Id.* at 693 (quoting 120 Cong. Rec. 39862 (Dec. 13, 1974) (Joint Statement in Explanation of Buckley/Pell Amendment) (emphasis supplied)). The court noted that the privacy protection is "secured by the regulations adopted . . . allowing the institution to release personally identifiable student records 'only upon written consent.'" *Id.* at 694 (quoting S. Rep. No. 93–1026, 93rd Cong., 2d Sess. 186, reprinted in 1974 U.S. Code Cong. & Admin. News 4250). Finally, the court concluded that because the requested information was personally identifiable, the public policy basis for non-disclosure outweighs the interest in disclosure. *Id.*

¶ 27. Our interpretation of FERPA here is consistent with *Rathie* and the stated purpose of the Act itself. Similar to *Rathie,* we conclude that non-consensual access to information in education records is not wholly forbidden. Rather, access is limited only to disclosure of information that is not personally identifiable. We agree

that an institution may release personally identifiable information contained in an education record, but only upon written consent, unless it is directory information.

¶ 28. We now turn to Osborn's open records requests and apply our interpretation of FERPA here. We focus on whether Osborn's requests seek personally identifiable information as defined in 34 C.F.R. § 99.3. Osborn is not requesting the student's name, the name of the student's parent or other family member, the address of the student or student's family, or a personal identifier such as the student's social security number. We, therefore, must determine whether the requested information is a list of personal characteristics or other information that would make the student's identity easily traceable.

¶ 29. The disputed open records requests here focus largely on test scores, class rank, grade point average, race, gender, ethnicity, and socio-economic background. At oral argument, Osborn's counsel clarified that at a minimum, Osborn needs the following information to accomplish stated research goals: test scores, grade point average, race, gender, and ethnicity. Furthermore, Osborn has maintained that the University should comply with FERPA by redacting all personally identifiable information. In fact, as early as June 22, 1998, Osborn wrote the University:

> [I]t was my expectation and intention in requesting this information that the various institutions would comply fully with the provisions of the Buckley Amendment, the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. 1232g, as amended, by redacting "private information." I did not explicitly specify that

personally identifiable information should be in all cases redacted because this is unquestionably required by that provision.

. . . .

In compliance with the Buckley Amendment, the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. 1232g, as amended, please redact all personally identifiable information. . . .

¶ 30. Based on the written requests and his counsel's statements at oral argument, we conclude that Osborn is not requesting personally identifiable information. The list of somewhat minimal information Osborn requests—grade point average, test scores, race, gender, and ethnicity (if recorded)—is not sufficient, by itself, to trace the identity of an applicant. Although we recognize that in a small number of situations the requested information could possibly create a list of characteristics that would make an individual personally identifiable, we conclude that under the circumstances here, the information is not personally identifiable. Specifically, we find it significant that the name of the high school or undergraduate institution is not included in Osborn's list of necessary information. With the name of the institution excluded, we conclude that it becomes significantly more difficult, if not impossible, to identify an individual based only on the data Osborn has requested. For example, by redacting or deleting the name of the high school or undergraduate institution, the University no longer faces a situation where only one minority student from a named high school applies to one of the University's campuses and therefore, even though the student's name is not disclosed, the data could be personally identifiable. By complying with Osborn's requests and

only disclosing the requested information, however, we conclude that the public records requests here do not seek personally identifiable information.

¶ 31. Furthermore, we find it significant that Osborn is asking the University to comply with FERPA and provide only the requested information that is not personally identifiable. As previously noted, at oral argument Osborn's counsel provided a list of minimal information needed to accomplish the desired research objectives. Osborn's counsel also indicated, however, that to the extent this requested information is personally identifiable, the University should state it as such and refuse disclosure. We conclude that Osborn's list of minimal necessary information is not a list of personal characteristics that would make a student's identity easily traceable. We do not intend, however, to deprive the University of a discretionary decision, in an individual case, to conclude that providing Osborn's list of minimal necessary information would involve disclosure of personally identifiable characteristics. The University should comply with FERPA and, in those few situations, refuse to disclose the information if it would indeed involve the release of personally identifiable information. We are satisfied that as long as the University complies with Osborn's requests and provides the somewhat minimal information necessary for Osborn's research, in all but a very few situations the disclosed data would be about the applicant, but not traceable to the applicant's identity. Accordingly, we conclude that the University inappropriately relied on FERPA in denying Osborn's open records request, because FERPA does not prohibit disclosure of records where personally identifiable information is not included.

¶ 32. Finally, we note that because we conclude that Osborn is not requesting personally identifiable information, we do not reach the issue of whether application records of those persons who did not matriculate are education records protected under FERPA. It is unnecessary, here, to decide that question. Since we conclude that none of Osborn's open records requests seek personally identifiable information, and thus, do not violate FERPA, it is unnecessary to distinguish between requests relating to applicants who subsequently enrolled and requests relating to applicants who did not matriculate.

## IV

¶ 33. The University's second stated reason for denying Osborn's open records requests was based on public policy. The University claimed that the requested information "implicates the personal privacy and reputational interests of individual students and applications for admission." Accordingly, the University balanced the interests involved and concluded that "[t]he public interest in the disclosure of these records is outweighed by the public interest in nondisclosure."

¶ 34. The University argues that Wisconsin's public records law exempts application records of students from disclosure. According to the University, the records of applicants contain only personal information, not information subject to disclosure, so none of the information Osborn requests from the application records is accessible under the open records law. The University argues here, by analogy, that Wis. Stat.

§ 118.125[13] is Wisconsin's equivalent to FERPA and that by following the analysis in *State ex rel. Blum v. Board of Education,* 209 Wis. 2d 377, 385, 565 N.W.2d 140 (Ct. App. 1997), it is clear that the public policy reflected by § 118.125 provides an exception to the presumption of access to records under the open records law.[14]

---

[13] We decline to address specifically the parties' arguments here regarding whether Wis. Stat. § 118.125 protects the requested documents from disclosure, because the University did not use this statute, originally, as a reason for denying access to the records. *See Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979) (It is not the court's role to consider reasons for not allowing inspection that were not asserted by the custodian.). We, therefore, consider and address § 118.125 only in the context of the University's public policy argument.

Wisconsin Stat. § 118.125(1)(d) defines pupil records as follows:

"Pupil records" means all records relating to individual pupils maintained by a school but does not include notes or records maintained for personal use by a teacher or other person who is required by the state superintendent under s. 115.28(7) to hold a certificate, license or permit if such records and notes are not available to others, nor does it include records necessary for, and available only to persons involved in, the psychological treatment of a pupil.

With regard to the confidentiality of pupil records, § 118.125(2) states in relevant part: "All pupil records maintained by a public school shall be confidential . . . ."

[14] We note that Wis. Stat. § 118.125(2) addresses the confidentiality of "[a]ll pupil records maintained by a public school." For the purposes of that statute, public schools are defined in § 115.01(1) as "the elementary and high schools supported by public taxation." Accordingly, we emphasize that to the extent we examine § 118.125, we do so only in the context of public policy considerations.

¶ 35. In *Blum,* the court of appeals concluded that an open records request by a student seeking interim grades for herself and another student, required disclosure of pupil records exempt from access under the open records law by the statutory exception set forth in Wis. Stat. § 118.125. *Id.* at 385. The court concluded that the grades were a "record" for the purposes of the open records law, but that they were also pupil records that must be kept confidential under § 118.125(2). Significantly, the court noted that the identity of the other student, even if not stated, would be easily identifiable. The court then stated, "nothing in § 118.125 suggests that 'pupil records' are exempted from the confidentiality requirement if released under a guise of anonymity." *Id.* at 384–385. The University argues that *Blum,* in combination with *Rathie,* which we discussed earlier, establishes that federal and state policies require that the application records requested here should not be released.

¶ 36. In contrast, Osborn and Amicus Curiae, The Reporters Committee for Freedom of the Press and Student Press Law Center (hereinafter collectively referred to as "Amicus"), argue that Wisconsin's public policy favors openness of records and that public access should be denied only in exceptional cases. In support of its position, Osborn cites the declaration of policy in the open records law, Wis. Stat. § 19.31, indicating that Wisconsin prefers open government and public accountability unless there is an exceptionally good reason for confidentiality. Osborn also cites this court's precedent expressing a presumption of open access. *See* ¶ 13, *supra.*

¶ 37. Applied here, Osborn and Amicus argue that there are important policy reasons for making the requested information available. Disclosing data from

student applications allows the public to research and conduct studies to gauge the effectiveness and appropriateness of the University's admissions practices and policies. Specifically, Osborn and Amicus argue that open access to application records keeps the actions of public universities accountable. Furthermore, with regard to Wisconsin's public policy as applied in *Blum*, Osborn and Amicus argue that it does not apply here because the "guise of anonymity" is not penetrable. In *Blum*, the records of the two students would be clearly traceable to the students' identities. Here, however, the requested information is not personally identifiable. According to Osborn, therefore, there is no justification to prohibit disclosure of the requested records based on *Blum*.

¶ 38. Finally, Osborn and Amicus argue that when balancing the public policy interests here, we should conclude that the presumption of openness prevails. Public policies favoring disclosure, including the presumption of openness, are to be weighed against the harm to the public interest in disclosing the requested information. *See Milwaukee Teachers' Ed. Ass'n v. Milwaukee Bd. of Sch. Dirs.*, 227 Wis. 2d 779, 786, 596 N.W.2d 403 (1999); *Woznicki v. Erickson*, 202 Wis. 2d 178, 183, 549 N.W.2d 699 (1996); *Wis. Newspress v. Sheboygan Falls Sch. Dist.*, 199 Wis. 2d 768, 781, 546 N.W.2d 143 (1996); *Breier*, 89 Wis. 2d at 437; *Kraemer Brothers, Inc. v. Dane County*, 229 Wis. 2d 86, 101, 599 N.W.2d 75 (Ct. App. 1999); *Rathie*, 142 Wis. 2d at 694. Osborn and Amicus argue that unlike *Rathie*, where the student records involved were personally identifiable, when applying the balancing test here the court should conclude that the public's interest in inspection and openness outweighs any potential detriment to the public interest in disclosure. The requested

information is not personally identifiable. According to Osborn and Amicus, therefore, this is not an exceptional case where, contrary to the presumption of openness, access should be denied.

¶ 39. We agree. We begin by applying the presumption of openness in Wisconsin, and pursuant to Wis. Stat. § 19.31, access should be denied only in an exceptional case. We have already concluded that the specific statutory exception of FERPA does not preclude disclosure of the requested records, and we now conclude that there is no overriding public interest in keeping the requested records confidential. *See Hathaway,* 116 Wis. 2d at 397.

¶ 40. We conclude that applying the balancing test here produces a different result than *Blum* and *Rathie.* In both of those cases, either because they were small in number or because they included specific information, the requested records contained personally identifiable information. We have already concluded here that Osborn is not requesting personally identifiable information. Any detriment to the public interest, such as a privacy or reputational interest, therefore, is not present. In contrast, the public interest in open access and the ability to analyze data regarding the University's admissions policies and procedures remains. After weighing these competing public policy interests, we conclude that the presumption of openness and access to public records prevails; public policy favors disclosure in this case. We reiterate that Wisconsin prefers open government and public accountability, and "only in an exceptional case may access be denied." § 19.31. This is not an exceptional case. We conclude, therefore, that the University inappropriately relied on public policy to deny Osborn's open records requests.

¶ 41. The University's final reason for denying Osborn's open records request was that in order to comply with the request, the University would have to essentially create a new record, which is not required under the open records law. Specifically, the University noted that the requested information regarding test scores, grade point averages, race, etc., is maintained only in the individual records of applicants. The University then cited Wis. Stat. § 19.35(1)(L) and stated, "Custodians of public records are not required to create new records by extracting information from existing records and compiling it in a new format. For this additional reason, disclosure of the records requested must be denied."

¶ 42. We begin by examining the statutes regarding a custodian's duty to redact. Wis. Stat. § 19.35(1)(L) states: "Except as necessary to comply with pars. (c) to (e) or s. 19.36(6), this subsection does not require an authority to create a new record by extracting information from existing records and compiling the information in a new format." As noted, § 19.35 must be read in conjunction with § 19.36(6), which relates to the separation of information for access under the open records law.

> If a record contains information that is subject to disclosure under s. 19.35(1)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record *shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release.*

§ 19.36(6) (emphasis added).

¶ 43. The University argues that compliance with Osborn's requests would require the University to redact information from thousands of documents and that, under the circumstances, redacting the personally identifiable information would essentially require the University to create a new record.[15] The University recognizes that redaction, by itself, does not result in creation of a new record. In this case, however, the University contends that the burden to redact is much larger than that required by the open records law. In support of this position, the University relies on *Schopper v. Gehring*, 210 Wis. 2d 208, 213, 565 N.W.2d 187 (1997), where the court of appeals concluded that an open records request that would require a custodian to copy 180 hours of tape is an insufficient request under § 19.35(1)(h)[16] because it is not reasonably limited by subject matter or length of time. The University

---

[15] We recognize that the University makes two other arguments regarding redaction. First, the University argues that Wis. Stat. § 19.36(6) does not apply here because the application records do not contain any information that is subject to disclosure. Second, the University argues that even if obvious identifiers have been redacted, the redaction might not be sufficient to protect the confidentiality of personally identifiable information. Both of these arguments relate to our conclusions in Section III of this opinion, mainly, that Osborn is not requesting personally identifiable information and that the information requested does not result in a list of characteristics or other information making the identity of the applicant traceable. Since we have already addressed these issues, we decline to address them again in the context of the University's arguments regarding redaction.

[16] Wisconsin Stat. § 19.35(1)(h) states in relevant part: "A request under pars. (a) to (f) is deemed sufficient if it reasonably describes the requested record or the information requested. However, a request for a record without a reasonable limitation

analogizes this case to the burden in *Schopper* of transcribing 180 hours of tape and concludes that the public records law does not require it to expend numerous hours and dollars redacting records to comply with Osborn's request.

¶ 44. In contrast to the University's position, Osborn and Amicus argue that the University has a statutory duty to redact information that is not subject to disclosure, and then disclose the remaining requested information. Osborn looks directly to the language in Wis. Stat. § 19.36(6) and argues that the legislature enacted the statute exactly for the circumstances present in this case—where some information is subject to disclosure and some is not. The legislature instructed that in this type of situation a custodian "*shall* provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release." § 19.36(6) (emphasis added). By using the word "shall," Osborn and Amicus argue that a custodian may not refuse to redact. Rather, the custodian has a duty to comply with the statute and separate information subject to disclosure from information that is not.

¶ 45. We agree with Osborn and conclude that the University must comply with the statutory duty to delete or redact information not subject to disclosure. Section 19.36(6) specifically addresses this situation where some of the information in the applicants' records is subject to disclosure, but some is not. We have concluded that the University must comply with Osborn's open records requests regarding the minimal information Osborn needs to fulfill research goals. The

---

as to subject matter or length of time represented by the record does not constitute a sufficient request."

applicants' records, however, also contain personally identifiable information that Osborn is not requesting and that we are not ordering the University to disclose. The information in the applicants' records, therefore, must be separated as instructed in § 19.36(6). The unambiguous and instructive word "shall" does not give a custodian, under these circumstances, the option of separating the information or simply denying the open records request. Rather, we conclude that the statute requires the custodian to provide the information subject to disclosure and delete or redact the information that is not. Applied here, the University must comply with § 19.36(6) by providing the information subject to Osborn's open records requests and delete or redact the information that is not.

¶ 46. Furthermore, we reject the University's reliance on *Schopper* because that argument is misplaced. The University is not relieved of its duty to redact under Wis. Stat. § 19.36(6) simply because the University believes it is burdensome.[17] *Schopper* was decided under § 19.35(1)(h) as an insufficient request as to subject matter or length of time. The University does

---

[17] In a motion to strike portions of the University's brief and at oral argument, Osborn's counsel noted, in response to the University's burdensome argument, that if the University had argued its burdensome position in the circuit court and if given the opportunity to respond to that argument, Osborn would provide evidence that 16 other Universities have complied with similar public records requests. We deny Osborn's motion to strike portions of the University's brief, since we have considered and rejected the arguments to which counsel objected. We note, however, that although it is not controlling, the fact that 16 other Universities have complied with similar requests is certainly of some persuasive value.

not raise the same argument here. Instead, the University attempts to use language in *Schopper* relating to "an unreasonable burden" on the custodian, and apply it here to excuse it from the statutory duty to redact. We reject the University's argument. It uses the language in *Schopper* out of context. In addition, we note that under the open records law, the University is not required, by itself, to bear the cost of producing documents in response to Osborn's request. Under § 19.35(3)[18], the University may impose a fee on Osborn

---

[18] Wisconsin Stat. § 19.35(3) states:

(3) FEES. (a) An authority may impose a fee upon the requester of a copy of a record which may not exceed the actual, necessary and direct cost of reproduction and transcription of the record, unless a fee is otherwise specifically established or authorized to be established by law.

(b) Except as otherwise provided by law or as authorized to be prescribed by law an authority may impose a fee upon the requester of a copy of a record that does not exceed the actual, necessary and direct cost of photographing and photographic processing if the authority provides a photograph of a record, the form of which does not permit copying.

(c) Except as otherwise provided by law or as authorized to be prescribed by law, an authority may impose a fee upon a requester for locating a record, not exceeding the actual, necessary and direct cost of location, if the cost is $50 or more.

(d) An authority may impose a fee upon a requester for the actual, necessary and direct cost of mailing or shipping of any copy or photograph of a record which is mailed or shipped to the requester.

(e) An authority may provide copies of a record without charge or at a reduced charge where the authority determines that waiver or reduction of the fee is in the public interest.

(f) An authority may require prepayment by a requester of any fee or fees imposed under this subsection if the total

for the location, reproduction or photographic processing of the requested records, but the fee may not exceed the actual, necessary and direct cost of complying with the open records requests.

¶ 47. Based on the unambiguous language in Wis. Stat. § 19.36(6), we conclude that the University has a duty to comply with Osborn's open records requests by redacting or deleting the information that is not subject to disclosure. We previously concluded that Osborn is not requesting personally identifiable information that is protected from disclosure either by FERPA or by public policy considerations. Consistent with Osborn's open records requests, therefore, the University must comply with § 19.36 by redacting or deleting personally identifiable information in the application records, before releasing the information subject to disclosure.

## VI

¶ 48. In summary, we reverse the court of appeals' decision. We have concluded that Osborn is not requesting personally identifiable information. Consequently, the University cannot rely on FERPA to prohibit the disclosure of the requested information found in student application records. We have balanced the public policy interests involved, and have concluded that because the requested information is not personally identifiable, there is no overriding public policy interest in keeping the requested records confidential. Finally, we

---

amount exceeds $5. If the requester is a prisoner, as defined in s. 301.01(2), or is a person confined in a federal correctional institution located in this state, and he or she has failed to pay any fee that was imposed by the authority for a request made previously by that requester, the authority may require prepayment both of the amount owed for the previous request and the amount owed for the current request.

have addressed the University's duty to redact under Wis. Stat. § 19.36(6) and have concluded that the unambiguous language of the statute requires the University to provide the information that is subject to disclosure, and to redact or delete the information that is not. Consistent with Osborn's open records requests and FERPA, therefore, the University must redact or delete personally identifiable information in the application records before releasing the information subject to disclosure. We have also noted that the University is entitled to charge a fee for the actual, necessary and direct cost of complying with these open records requests.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 49. SHIRLEY S. ABRAHAMSON, C.J., did not participate.