MILWAUKEE JOURNAL SENTINEL, Ben Poston and
Gina Marie Barton, Plaintiffs-Appellants,

v.

CITY OF MILWAUKEE, City of Milwaukee Police
Department and Edward A. Flynn,
Defendants-Respondents.

Supreme Court

*No. 2011AP1112. Oral argument April 17, 2012.
—Decided June 27, 2012.*

2012 WI 65

(Also reported in 815 N.W.2d 367.)

608

609

For the plaintiffs-appellants there were briefs (in the court of appeals) filed by *Robert J. Dreps* and *Godfrey & Kahn,* Madison, and oral argument by *Robert J. Dreps.*

For the defendants-respondents there was a brief (in the court of appeals) filed by *Grant F. Langley,* city attorney, Milwaukee and *Melanie R. Swank,* assistant city attorney, Milwaukee with oral argument by *Melanie R. Swank.*

An amicus curiae brief was filed by *Claire Silverman, League of Wisconsin Municipalities* for League of Wisconsin Municipalities.

An amicus curiae brief was filed by *Carrie Benedon,* assistant attorney general for Wisconsin Department of Justice, with whom on the brief was *J.B. Van Hollen,* attorney general, and the cause was argued by *Carrie Benedon.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. Once again this court is asked to interpret the Wisconsin Public Records Law, Wis. Stat. §§ 19.31–.39 (2009–10).[1] The issue presented is whether an authority[2] may impose a fee on a requester of a public record for the actual,

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009–10 version, unless otherwise indicated.

[2] The word "authority" is defined in Wis. Stat. § 19.32(1) as follows:

> "Authority" means any of the following having custody of a record: a state or local office, elected official, agency, board, commission, committee, council, department or public body corporate and politic created by constitution, law, ordinance, rule or order; a governmental or quasi-governmental corporation except for the Bradley center sports and entertainment corporation; a local

610

necessary, and direct costs incurred by the authority (including staff time) of deleting nondisclosable information included within the responsive records.[3] We conclude that it may not.[4]

¶ 2. The Milwaukee Journal Sentinel and reporters Ben Poston and Gina Marie Barton (collectively referred to as the Newspaper) seek review of an order of the Circuit Court for Milwaukee County, Thomas R. Cooper, Judge, granting the summary judgment motion of the defendants, the City of Milwaukee, the City of Milwaukee Police Department, and Milwaukee Chief of Police Edward A. Flynn (collectively referred to as the City).

¶ 3. The circuit court concluded that the City was entitled to charge the Newspaper for "the actual costs of staff time to review and redact confidential information included within the responsive records."[5] This court

exposition district under subch. II of ch. 229; a long-term care district under s. 46.2895; any court of law; the assembly or senate; a nonprofit corporation which receives more than 50% of its funds from a county or a municipality, as defined in s. 59.001(3), and which provides services related to public health or safety to the county or municipality; or a formally constituted subunit of any of the foregoing.

[3] We use the words "deleting" and "redacting" interchangeably.

[4] All Justices agree to reverse the order of the circuit court and remand the cause to the circuit court, but Justices Prosser, Roggensack, Ziegler, and Gableman do not join this opinion. Justice Roggensack's concurring opinion is the majority opinion on the policy issue.

[5] With regard to another issue raised below, the circuit court wrote the following: "The Court declines to rule on the issue of what a reasonable time for compliance with the two public records requests at issue would be in this case. The Defendants may estimate a reasonable amount of time required

took the appeal on the Newspaper's petition to bypass the court of appeals. Wis. Stat. § (Rule) 809.60.

¶ 4. Wisconsin's commitment to open, transparent government rings loud and clear in the Public Records Law. The Law reaffirms that the people have not only the opportunity but also the right to know what the government is doing and to monitor the government. The legislature has explicitly provided that "all persons are entitled to the greatest possible information regarding the affairs of government"; mandated that the Public Records Law "be construed in every instance with a presumption of complete public access"; and declared that the "denial of public access generally is contrary to public interest, and only in an exceptional case may access be denied." Wis. Stat. § 19.31. In its entirety, the legislative "Declaration of Policy" in the Public Records Law reads as follows:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business.

to respond to the requests, but may not limit in advance the amount of time they will spend per week on these requests." We are not asked to review this issue and it is not before the court.

The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.[6]

¶ 5. This case is not about a direct denial of public access to records, but the issue in the present case directly implicates the accessibility of government records. The greater the fee imposed on a requester of a public record, the less likely the requester will be willing and able to successfully make a record request. Thus, the imposition of fees limits and may even serve to deny access to government records. In interpreting the Public Records Law, we must be cognizant that the legislature's preference is for "complete public access" and that the imposition of costs, as a practical matter, inhibits access.

¶ 6. Interpreting the Public Records Law in light of the text of the particular provision at issue and the Declaration of Policy, as well as in light of prior interpretations of the Law by the Attorney General and appellate courts, we conclude that the City may not charge the Newspaper for the costs, including staff time, of redacting information. Such costs do not fit within the fees set forth in Wis. Stat. § 19.35(3)(a)-(d). Accordingly, we reverse the order of the circuit court and remand the cause to the circuit court for judgment to be entered in favor of the Newspaper.

I

¶ 7. The facts of this case are not in dispute and revolve around public records requests of Milwaukee Journal Sentinel reporters Ben Poston and Gina Marie Barton seeking records from the Milwaukee Police Department.

---

[6] Wis. Stat. § 19.31.

¶ 8. Reporter Poston requested computer-aided dispatch records and any related incident reports for fourteen crime categories for a two-week period in March 2010. The City identified 2,312 dispatch records and 743 incident reports that were responsive to Poston's request. The City asked that the Newspaper pay $2,081.80 in advance for locating and copying these records.

¶ 9. After discussing the matter with police officials, reporter Poston withdrew his request for the incident reports, and the City agreed to produce a CD containing a summary of each dispatch record that was responsive to Poston's request. The City charged $10.00 for the CD and $100.30 for the time necessary to locate the records. The Newspaper paid these charges, and they are not at issue in the present case.

¶ 10. Reporter Poston then requested 100 incident reports, which the City provided without charge.

¶ 11. Reporter Poston then requested an additional 100 incident reports. This time the City responded that it would charge the Newspaper for the City's "actual costs of complying with" the request. To prepare the incident reports for inspection, City employees were required to delete nondisclosable information, such as Social Security numbers, financial account numbers, and crime victim and suspect identifying information. City employees examined the printed records and redacted sensitive information by marking over the information with a black pen. The City asked for prepayment of $601.80 based on the fact that it spent 15 staff hours at $40.12 per hour to prepare the initial 100 incident reports.

¶ 12. Reporter Barton requested dispatch records and related incident reports for all sexual assaults during the 2009 calendar year. In response, reporter

Barton received a spreadsheet summarizing dispatch records in the same format as that received by reporter Poston.

¶ 13. Reporter Barton then narrowed her request to include only the incident summary from each report. The City requested advance payment of $3,516.75, including $126.75 for copying and $3,390 for staff time spent reviewing and redacting the records.

¶ 14. The Newspaper refused to pay the requested charges. Instead it commenced action against the City seeking judgment compelling the City to release the records without prepayment of any fees assessed for redacting information. The Newspaper agreed, for purposes of the summary judgment, that the City's estimates of the time required to review and redact the requested records were made in good faith and were not intended to generate a profit.

¶ 15. As noted above, the circuit court granted summary judgment to the City on the issue of the fees for redaction, authorizing the City to charge the Newspaper "for all actual, necessary and direct costs incurred by [the City] in complying with the two public records requests at issue; including the actual costs of staff time to review and redact confidential information included within the responsive records."

¶ 16. The Newspaper petitioned to bypass the court of appeals, and this court granted the petition.

## II

██

¶ 17. This case calls for the court to interpret and apply the Public Records Law to undisputed facts. The interpretation and application of a statute to undisputed facts presents a question of law that this court

determines independently but benefitting from the analyses of the circuit court and court of appeals.[7]

¶ 18. The court has examined numerous sources in interpreting and applying the Public Records Law, including the text and context of the relevant provisions, the legislature's Declaration of Policy, and interpretations of the relevant statutory provisions by the Attorney General and prior cases.[8]

### III

### A

¶ 19. We first examine the text of the Public Records Law. The Law mandates the release of certain records.[9] There is no dispute that the records requested fall within the statutory definition of a record to be released. That a record custodian must review each record to determine whether to release the record is a basic, routine task of the custodian under the Law.[10]

¶ 20. The Law requires the deletion of information not subject to disclosure. Wisconsin Stat. § 19.36(6) states that "[i]f a record contains information that is

---

[7] *Schill v. Wis. Rapids Sch. Dist.*, 2010 WI 86, ¶ 19, 327 Wis. 2d 572, 786 N.W.2d 177 (Abrahamson, C.J., lead op.).

[8] *See id.*, ¶ 21 (Abrahamson, C.J., lead op.).

[9] Wis. Stat. § 19.35(1)(a), (am).

[10] An informal opinion of the Attorney General states: "Setting redaction itself aside for a moment, reviewing records to determine whether or not redaction is even necessary is clearly within the scope of an authority's general duties to apply the public records law. . . . To charge requesters for the mere review of records is therefore tantamount to charging them for the cost of applying the law in its most general sense. I think that is unreasonable as a general matter." Letter from Wis. Ass't Att'y Gen. Lewis W. Beilin to Jim Zellmer (Feb. 4, 2010).

subject to disclosure . . . and information that is not subject to . . . disclosure, the authority . . . shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release." The parties do not dispute that the deletions were necessary in the present case.

¶ 21. Wisconsin Stat. § 19.36(6) demonstrates that when it enacted the Public Records Law in 1981, the legislature was well aware that some requests would require an authority to delete information. The requests in the present case required the City to do exactly what the legislature envisioned in 1981, namely, to manually delete pieces of information from a record using a pen. The City cannot claim that the legislature did not contemplate the need for an authority to devote time and resources to this task. Nonetheless, the question at the heart of this case remains: May the City pass these costs on to the requester?

¶ 22. Nothing in the Public Records Law specifically states that a record custodian may charge for the actual, necessary, and direct costs of deleting information from a responsive record. The City does not dispute this proposition. Rather, the City argues that the Law can be interpreted to allow it to impose a fee on a requester for such costs.

¶ 23. The Public Records Law details the tasks for which an authority may impose fees on a requester. The legislature included four tasks: reproduction and transcription of the record; photographing and photographic processing; locating a record; and mailing or shipping of any copy or photograph of a record.

¶ 24. The Law empowers an authority to impose a fee that does not exceed the "actual, necessary and direct" cost of performing the enumerated tasks.

617

¶ 25. In relevant part, Wis. Stat. § 19.35(3) provides as follows:

> (3) Fees. (a) An authority may impose a fee upon the requester of a copy of a record which may not exceed the actual, necessary and direct cost of *reproduction and transcription* of the record, unless a fee is otherwise specifically established or authorized to be established by law.
>
> (b) Except as otherwise provided by law or as authorized to be prescribed by law an authority may impose a fee upon the requester of a copy of a record that does not exceed the actual, necessary and direct cost of *photographing and photographic processing* if the authority provides a photograph of a record, the form of which does not permit copying.
>
> (c) Except as otherwise provided by law or as authorized to be prescribed by law, an authority may impose a fee upon a requester for *locating* a record, not exceeding the actual, necessary and direct cost of location, if the cost is $50 or more.
>
> (d) An authority may impose a fee upon a requester for the actual, necessary and direct cost of *mailing or shipping* of any copy or photograph of a record which is mailed or shipped to the requester.[11]

¶ 26. Deleting information does not fit neatly into "reproduction and transcription," "photographing and photographic processing," "locating," or "mailing or shipping." The City contends that redacting is included

---

[11] Wis. Stat. § 19.35(3) (emphasis added). Wisconsin Stat. § 19.35 also contains a provision allowing an authority to forgo or reduce fees if it is in the public interest, a provision allowing an authority to require prepayment if fees will exceed five dollars, and a provision governing allowable fees when the record is "produced or collected by a person who is not an authority pursuant to a contract entered into by that person with an authority . . . ." *See* Wis. Stat. § 19.35(3)(e), (f), (g).

618

in the statutory provisions governing "locating" and "reproduction." The City argues that until a record is in a form that is properly disclosable, it has not truly been "located" or "reproduced."

■

¶ 27. We reject the City's interpretation of Wis. Stat. § 19.35(3). It does not square with the text of the Public Records Law or with the legislature's Declaration of Policy in the Law.

¶ 28. The Public Records Law does not define "locating" or "reproduction." These words are not technical or specialized words. "Locating" and "reproduction" are words with commonly understood meanings that should be used in interpreting and applying the Law.[12]

■■

¶ 29. The court often refers to the dictionary to interpret a statute. A standard dictionary definition of "locate" is "to find by searching, examining, or experimenting."[13] We agree with the League of Wisconsin Municipalities (which filed a non-party brief) that "[a] custodian who knows that a record is located somewhere in a large file cabinet downstairs has not 'located' the record." However, we disagree with the League that "[a] record is not truly 'located' until it exists in a

---

[12] Wisconsin Stat. § 990.01(1) provides as follows:

990.01 Construction of laws; words and phrases. In the construction of Wisconsin laws the words and phrases which follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature:

(1) General Rule. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning.

[13] *The American Heritage Dictionary of the English Language* 1055 (3d ed. 1992).

releasable form." Once the custodian goes to the file cabinet (or the computer file), removes the responsive record, and holds that responsive record in his or her hands (or views it on a computer screen), the record has been located.

¶ 30. It is certainly true that the custodian has not completed its obligations under the Law once the record is located. The record still needs to be reviewed in order to determine whether it contains information that cannot be disclosed. But under an ordinary understanding of the word "locate," the process of reviewing and deleting parts of a record has nothing to do with "locating" the record. Reviewing a record and deleting parts of a record are separate processes that begin *after* the record has been located.

██

¶ 31. Moving on to the statutory provision allowing the imposition of a fee for the costs of "reproduction," a standard dictionary definition of "reproduction" is "the act of reproducing or the condition or process of being reproduced"; "reproduce," in turn, is defined as "to produce a counterpart, an image, or a copy of."[14] Inherent in this definition is the notion that the document or record is not altered, but simply copied. We read "reproduction" in Wis. Stat. § 19.35(3)(a) to refer to rote, ministerial tasks that do not change the content of the record. Examples of "reproduction" under the Law might occur when a custodian prints out a copy of a record that is stored electronically, or makes a photocopy of a record that is stored in hard copy.

¶ 32. The process of redacting information from records does not fit within the meaning of "reproduc-

---

[14] *The American Heritage Dictionary of the English Language* 1532 (3d ed. 1992).

tion." Redaction is a process that alters the record. Reproduction, in contrast, is a process that copies the record to produce an unchanged counterpart.

¶ 33. The language of Wis. Stat. § 19.35(3) is not particularly complex. The legislature provided four tasks for which an authority may impose fees on a requester: "reproduction and transcription," "photographing and photographic processing," "locating," and "mailing or shipping." For each task, an authority is permitted to impose a fee that does not exceed the "actual, necessary and direct" cost of the task. The process of redacting information from a record does not fit into any of the four statutory tasks.

¶ 34. Technological advances of the past three decades have dramatically altered the ways in which the government creates and stores records, but as the Department of Justice explains in its non-party brief, the present case calls for the City to do exactly the type of redacting that the legislature likely envisioned when it enacted Wis. Stat. § 19.36(6), namely, to use a pen or some other rudimentary method to delete portions of the requested record before releasing it to the requester. If the legislature contemplated the very process of deletion to be used in the present case and did not explicitly impose costs for deletion, the statutory text cannot be read to authorize the imposition of a fee for the costs of the deletions.

¶ 35. The Law allows an authority to impose fees for four specific tasks. That the legislature listed four tasks for which fees may be imposed demonstrates that the legislature considered the imposition of fees and knew how to authorize particular types of fees. The statutory text does not allow the imposition of a broad array of fees for any and every cost incurred by an authority.

¶ 36. If the legislature had wanted to allow an authority to impose fees for a broad range of tasks, or if it had wanted to include the task of redaction as a task for which fees may be imposed, it would have said so. It did not. The most reasonable way to interpret the Law is to say that the legislature intended an authority to impose fees only for the tasks specified in the Law. As the court is fond of saying in statutory interpretation cases, if the legislature had intended to accomplish what a party is urging on the court (like allowing an authority to impose fees for redacting records), the legislature knew how to draft that language and could have done so had it wished.[15]

█

¶ 37. The legislature did not specifically allow an authority to impose fees for the costs of redacting information from a record, and this court must respect the text. It goes without saying, of course, that the legislature may amend the fee provisions. Policy decisions are left to the legislature.

B

█

¶ 38. It would require an unnatural reading of the statutory text to include the costs of redaction in one of the categories listed in Wis. Stat. § 19.35(3). Courts

---

[15] *See, e.g., Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 76 n.2, 325 Wis. 2d 135, 785 N.W.2d 302 (Gableman, J., concurring in part and dissenting in part) ("If the legislature wanted to allow only express waiver under § 421.401(2), it could have said so."); *In re Torrance P., Jr.*, 2006 WI 129, ¶ 44, 298 Wis. 2d 1, 724 N.W.2d 623 ("If the legislature wanted the right to counsel to be contingent upon a parent's appearance in person, it could have expressly stated so.").

occasionally will entertain a somewhat unnatural or creative reading of a statutory text if such an interpretation is necessary to further a statute's purpose or is necessary to prevent an absurd result that the legislature could not have intended. The instant case decidedly does not present either of those situations.

¶ 39. As we have stressed, the purpose of the Public Records Law, as explicitly stated in the Declaration of Policy, is to provide the people of Wisconsin with "the greatest possible information regarding the affairs of government." Wis. Stat. § 19.31. The legislature explicitly instructed the courts that the Public Records Law "shall be construed in every instance with a presumption of complete public access." Wis. Stat. § 19.31.

■

¶ 40. We interpret the text of the Public Records Law in light of the Declaration of Policy, which is to foster transparent government. In the present case, the interpretation prohibiting the imposition of fees for deletions is the more natural interpretation of the text and also comports with the public policy favoring public access to records.[16] Increasing the costs of public

---

[16] Examining other state laws about imposition of fees is of limited assistance in interpreting the Public Record Law. Other states' statutes are drafted differently than the Public Records Law.

Some states' legislatures explicitly allow an authority to charge a fee for redacting. *See, e.g.,* Me. Rev. Stat. tit. I, § 408(3)(B) (2011) (allowing fees for compiling the record and defining "compiling" to "include[] reviewing and redacting confidential information"); Or. Rev. Stat. § 192.440(4)(b) (2010) (allowing fees for "the cost of time spent . . . reviewing the public records, redacting material from the public records or segregating the public records into exempt and non-exempt records").

records requests for a requester may inhibit access to public records and, in some instances, render the records inaccessible.

C

■■■

¶ 41. Beyond the text and policy of the Public Records Law, our interpretation of the statute is also informed by the interpretations of the Attorney General[17] and appellate courts. The opinions and writings of the Attorney General have special significance in interpreting the Public Records Law, inasmuch as the legislature has specifically authorized the Attorney General to advise any person about the applicability of the Law.[18] The opinions of the Attorney General are not binding on the courts but may be given persuasive effect.[19]

¶ 42. Shortly after the Public Records Law was enacted in 1981, the Attorney General issued an opin-

---

The Kansas Supreme Court interpreted a statute silent about charging the requester for the costs of redacting records as imposing costs on the requester. *See Data Tree, LLC v. Meek,* 109 P.3d 1226 (Kan. 2005). The Georgia Supreme Court also ruled that a record custodian may charge the requester for the costs of redaction of certain records. *See Griffin-Spalding Cnty. Hosp. Auth. v. Radio Station WKEU,* 241 S.E.2d 196 (Ga. 1978).

[17] *Schill,* 327 Wis. 2d 572, ¶ 105 (Abrahamson, C.J., lead op.).

[18] *See* Wis. Stat. § 19.39 ("Any person may request advice from the attorney general as to the applicability of this sub-chapter under any circumstances. The attorney general may respond to such a request."); *Schill,* 327 Wis. 2d 572, ¶ 106 (Abrahamson, C.J., lead op.).

[19] *State v. C.A.J.,* 148 Wis. 2d 137, 140, 434 N.W.2d 800 (Ct. App. 1988) (citing *State v. Gilbert,* 115 Wis. 2d 371, 380, 340 N.W.2d 511, 516 (1983)).

ion addressing the question the court faces today. The Attorney General quoted the entirety of Wis. Stat. § 19.36(6), which requires the authority to delete non-disclosable information, and then stated, "Since there is no provision made therein or elsewhere in the law for charging such separation costs to the person who requests access to the record, the agency must bear such costs."[20]

¶ 43. While it is unwise to make too much of legislative inaction, it is noteworthy that the legislature has not added an additional task for which fees may be imposed in the nearly 30 years since the Attorney General explicitly and unequivocally concluded that requesters may not be charged for the costs of deleting parts of records.[21] The legislature has revisited the

[20] 72 Wis. Op. Att'y Gen. 99, 101 (1983) (OAG 28–83).

[21] Some of our prior cases have relied on perceived legislative acquiescence. *See, e.g., Progressive N. Ins. Co. v. Romanshek,* 2005 WI 67, ¶ 56, 281 Wis. 2d 300, 697 N.W.2d 417 ("[W]e conclude that the doctrine of legislative acquiescence is applicable here. While the doctrine is not an immutable rule, it is particularly relevant here because both the majority opinion and the dissent in *Hayne* invited the legislature to amend § 632.32(4)(a)2.b. if it disagreed with our interpretation of the statute.").

Other cases have expressed skepticism about the meaning of legislative inaction. *See, e.g., Wenke v. Gehl Co.,* 2004 WI 103, ¶ 32, 274 Wis. 2d 220, 682 N.W.2d 405 ("Legislative acquiescence is a familiar argument in statutory construction cases. Yet, as a principle, it is subsidiary to a more important principle —that the goal of statutory interpretation is to ascertain and give effect to the statute's intended purpose. . . . [T]he 'legislative acquiescence' argument is often vulnerable to rebuttal." (Citations omitted.)). *See also* William N. Eskridge, Jr., *Interpreting Legislative Inaction,* 87 Mich. L. Rev. 67 (1988) (exploring the potential relevance and meaning of legislative inaction).

Public Records Law on several occasions since it was enacted, and it is at least arguable that it has endorsed the Attorney General's interpretation by not amending the fees provisions to include the costs associated with the task of deleting parts of records.

¶ 44. We now reach the same conclusion the Attorney General reached in 1983 based on the text and purpose of the Law. We must acknowledge, however, that bits and pieces of language from two of our cases interpreting other provisions of the Public Records Law have evidently caused some uncertainty regarding the permissibility of imposing fees for deleting parts of records.[22] We take this opportunity to clarify that neither of the cases in question intended to expand or did expand the scope of allowable fees beyond those provided in the statute.

¶ 45. The first case is *Osborn v. Board of Regents of the University of Wisconsin System*, 2002 WI 831, 254 Wis. 2d 266, 647 N.W.2d 158. The issue of whether an authority could impose a fee for the costs of deletion of parts of records was not before the court in *Osborn*. Rather, the court decided whether the authority (the University of Wisconsin) had a duty to delete parts of records. After concluding that the University was required to delete information and rejecting the University's argument that it should be relieved of its

_____

[22] *See* Dep't of Justice, Office of the Att'y Gen., *Wisconsin Public Records Law, Wis. Stat. §§ 19.31–19.39, Compliance Outline* 51 (Aug. 2010) ("It has been the position of recent Attorneys General that costs of separating, or 'redacting,' the confidential parts of records from the public parts generally must be borne by the authority. A recent supreme court case has been relied upon by some authorities as permission to charge these costs to the requester." (Citations omitted.)).

duty to delete parts of records because deletions were burdensome, the court made the following observation regarding allowable fees:

> In addition, we note that under the open records law, the University is not required, by itself, to bear the cost of producing documents in response to Osborn's request. Under § 19.35(3), the University may impose a fee on Osborn for the location, reproduction or photographic processing of the requested records, but the fee may not exceed the actual, necessary and direct cost of complying with the open records requests.[23]

¶ 46. A close reading of this language from *Osborn* reveals that the court did not allow the University to impose any and all fees. Nor did the *Osborn* court explicitly allow fees for redacting. Rather, the court intended to allow fees only as provided in Wis. Stat. § 19.35(3). The court cited the Law and expressly referred to three of the four tasks for which fees may be imposed under the Law.

¶ 47. The City, however, focuses on a single sentence from *Osborn* in isolation rather than in the context of the opinion's full discussion of fees. The sentence states, "We also note that the University is entitled to charge a fee for the actual, necessary, and direct cost of complying with these open record requests."[24] The sentence read in a vacuum might be read to allow the authority to charge fees for *all* "actual, necessary, and direct" costs of complying with a public records request. However, viewing the sentence in context, we conclude that *Osborn* should not be read to

---

[23] *Osborn v. Bd. of Regents of the Univ. of Wis. Sys.*, 2002 WI 83, ¶ 46, 254 Wis. 2d 266, 647 N.W.2d 158.

[24] *See id.*, ¶¶ 3, 48.

allow any fees that are not expressly allowed under Wis. Stat. § 19.35(3). The *Osborn* court did not expand the text of Wis. Stat. § 19.35(3) and the circuit court erred in holding otherwise.

¶ 48. An informal Attorney General Opinion issued after *Osborn* agrees with our conclusion today. The assistant attorney General opined as follows:

> While *Osborn* may afford the basis for a claim that redaction costs may be included as part of the actual, necessary and direct costs of complying with a public records request, the decision does not explicitly state as much. Moreover, the statute upon which the decision rests does not provide for recovery of such costs. In the absence of such specific authorization, and in light of the broad presumption under state law of open access to public records, I conclude that charging for the cost of redaction would be inappropriate.[25]

---

[25] *See* Letter from Wis. Att'y Gen. Peggy A. Lautenschlager to Bill Lueders (June 1, 2004).

In a later informal Attorney General Opinion to Jim Zellmer (Feb. 4, 2010), the Attorney General, referring to a misreading of *Osborn* and *WIREdata, Inc. v. Village of Sussex,* 2008 WI 69, 310 Wis. 2d 397, 751 N.W.2d 736, opined the following about imposing a fee for redaction:

> There is somewhat conflicting authority on whether an authority may pass along to requesters the costs of redacting confidential parts of records from accessible parts. . . . The Attorney General's Office has opined that redaction costs generally must be borne by the authority. *See* 72 Op. Att'y Gen. 99 (1983). However, the supreme court's *Osborn* decision has been relied on by some authorities as permission to charge these costs to requesters.

For a similar statement, see Dep't of Justice, Office of the Att'y Gen., *Wisconsin Public Records Law, Wis. Stat. §§ 19.31–19.39, Compliance Outline* 51 (Aug. 2010).

In another informal Attorney General Opinion, an assistant attorney general acknowledged that "[o]pinion is divided

¶ 49. The second case is *WIREdata, Inc. v. Village of Sussex,* 2008 WI 69, 310 Wis. 2d 397, 751 N.W.2d 736. Again, the issue of imposing a fee for the cost of deleting parts of the records was not before the court. The *WIREdata* court stated that "[a]n authority may not make a profit, but an authority may recoup all of its actual costs."[26] The *WIREdata* court also explained that "nothing in this opinion should be viewed as changing or modifying our prior case law that an authority may charge fees only as provided under Wis. Stat. § 19.35(3)(a), fees that reflect the actual, necessary, and direct costs of providing the information."[27]

¶ 50. We read *WIREdata* as allowing an authority to impose fees only in accordance with the tasks detailed in the Public Records Law. Like *Osborn, WIREdata* should not be read to allow an authority to impose fees more freely than the Public Records Law allows. Were we to read *WIREdata* to allow an authority to recover *all* of its actual costs in releasing records, the opinion would conflict with the Public Records Law, which provides only four tasks for which fees may be imposed, not a guarantee that all expenses incurred by an authority may be recovered from the record requester.[28] If the

whether an authority may pass along to requesters the cost of redacting confidential parts of records from accessible parts." Letter from Wis. Ass't Att'y Gen. Lewis W. Beilin to Eric Marcus (June 22, 2011).

[26] *WIREdata,* 310 Wis. 2d 397, ¶ 107.

[27] *Id.* Wisconsin Stat. § 19.35(3)(a) is not the only provision that provides allowable fees. *See also* Wis. Stat. § 19.35(3)(b), (c), (d).

[28] The present case does not call for us to examine *WIREdata*'s statement that an authority may charge a fee for "computer programming expenses or any other related expenses." *WIREdata,* 310 Wis. 2d 397, ¶ 107. We note, however,

629

legislature had intended to allow an authority to recoup all of its actual costs, it could have simply said so rather than delineate four specific tasks for which fees may be imposed in Wis. Stat. § 19.35(3). We do not read *Osborn* or *WIREdata* to conflict with or alter the Law's provisions governing fees.

¶ 51. The City makes a legislative acquiescence argument that we do not find persuasive. The City argues that *Osborn* and *WIREdata* clearly held that an authority may recover all the actual costs of complying with a public records request, and that the legislature has implicitly approved such a statement of law because it has not amended the fee provisions of the Public Records Law in the 10 years since *Osborn*. Our problem with the City's argument is twofold.

¶ 52. First, as we have explained, *Osborn* and *WIREdata* did not clearly hold what the City claims they did. Despite some language taken out of context, *Osborn* and *WIREdata* stand for the proposition that the text of Wis. Stat. § 19.35(3)(a) is to be read as it is written. The legislature's failure to act is not, as we stated before, a strong indication of the legislature's intent, but it is particularly weak when the cases to

that certain computer programming expenses may fall within "locating" or "reproduction," which are allowable categories of fees. *See* 72 Wis. Op. Att'y Gen. 68 (1983) (OAG 19–83). The present case also does not call for us to address the attorney general's contention that, "in extreme cases," it may become difficult to "distinguish[] between redacting discrete items of confidential information from a larger document, and the practical necessity of actually creating or compiling a new record from a mass of collected data." *See* Dep't of Justice, Office of the Att'y Gen., *Wisconsin Public Records Law, Wis. Stat. §§ 19.31–19.39, Compliance Outline* 51 (Aug. 2010). The City does not contend that the required redactions in the present case constituted the creation of a new record.

which the legislature purportedly acquiesced do not unambiguously state what the City urges.

¶ 53. Second, if legislative acquiescence arguments are to carry the day in the present case, the City has no explanation for the legislature's long-standing acquiescence to the Attorney General Opinion issued in 1983 that unequivocally stated that an authority may not impose a fee for redacting expenses.[29] Nineteen years passed between the Attorney General Opinion and this court's *Osborn* opinion in which the legislature could have acted to allow authorities to recover redacting expenses, yet it never expanded the fee provisions.

¶ 54. We make clear that *Osborn* and *WIREdata* should not be read broadly to allow an authority to impose fees for *all* "actual, necessary and direct" costs of complying with any public records request.[30] The legislature carefully provided that an authority may charge a fee not exceeding the actual, necessary, and direct costs *of four specific tasks:* (1) "reproduction and transcription"; (2) "photographing and photographic processing"; (3) "locating"; and (4) "mailing or shipping." *See* Wis. Stat. § 19.35(3)(a)-(d).

¶ 55. The time spent redacting information from the requested records does not fit into these four statutory tasks. We decline to expand the range of tasks for which fees may be imposed. To do so would be in direct contravention of the text of the Law and our

---

[29] *See supra* ¶ 43.

[30] Taken to its logical conclusion, such a broad holding would allow an authority to charge a fee for the time an attorney spent reviewing a public records request to determine how the authority should respond. No party contends that allowable fees should extend to this staff time.

legislatively imposed duty to construe the Public Records Law "with a presumption of complete public access." Wis. Stat. § 19.31.

¶ 56. We conclude by noting that the legislature has protected the interests of authorities along with its strong preference for public access. For one, as we have stressed throughout this opinion, an authority is entitled to charge fees for the specific tasks set forth in Wis. Stat. § 19.35, which relieves an authority of some of the financial burden of complying with public records requests. Also, for example, an authority may reject "a request for a record without a reasonable limitation as to subject matter or length of time." Wis. Stat. § 19.35(1)(h). Moreover, the Law affords authorities "reasonable latitude in the time frame for their responses."[31] Charging the requester for redacting expenses, however, is not permitted.

* * * *

¶ 57. The policy animating the Public Records Law is that "all persons are entitled to the greatest possible information regarding the affairs of government." Wis. Stat. § 19.31. The legislature has instructed that the Public Records Law "be construed in every instance with a presumption of complete public access." Wis. Stat. § 19.31.

¶ 58. Interpreting the Public Records Law in light of the text of the particular provisions at issue and the Declaration of Policy, as well as in light of prior inter-

---

[31] *WIREdata,* 310 Wis. 2d 397, ¶ 56. *See also* Wis. Stat. § 19.35(4)(a) (requiring authorities to respond to public records requests "as soon as practicable").

pretations of the Law by the Attorney General and appellate courts, we conclude that the City may not charge the Newspaper for the costs, including staff time, of redacting information. Such costs do not fit within the fees set forth in Wis. Stat. § 19.35(3)(a)-(d). Accordingly, we reverse the order of the circuit court and remand the cause to the circuit court for judgment to be entered in favor of the Newspaper.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded to the circuit court.

¶ 59. DAVID T. PROSSER, J. (*concurring*). In all likelihood, the lead opinion reaches the correct result. It strictly adheres to the terms of the statute and shows that this construction follows a consistent pattern of interpretation since the early 1980s.

¶ 60. Nonetheless, I am joining Justice Roggensack's concurrence because it graphically illustrates the potential downside of this decision and the need for the legislature to reexamine the law.

¶ 61. The lead opinion asserts that, "The law allows an authority to impose fees for four specific tasks." Lead op., ¶ 35. "The statutory text does not allow the imposition of a broad array of fees for any and every cost incurred by an authority." *Id.*

¶ 62. The plain implication of this ruling is that an authority may not charge a fee for an unenumerated "task," no matter how costly that task may be. As a result, shrewd requesters will be able to use government resources to obtain valuable information at little or no cost so long as they are able to minimize or avoid the "four specific tasks." *Cf. WIREdata, Inc. v. Village of Sussex,* 2008 WI 69, 310 Wis. 2d 397, 751 N.W.2d 736.

¶ 63. We live in an information age. Taxpayers are paying for the accumulation of vast amounts of data.

Now taxpayers may have to pay to give that data away so that others can make a profit.

¶ 64. A second implication of the decision is that governments have been largely disarmed in dealing with large, demanding requests, like the request in *Osborn v. Board of Regents of the University of Wisconsin System,* 2002 WI 83, 254 Wis. 2d 266, 647 N.W.2d 158. The lead opinion has no answer on how to deal with this situation.

¶ 65. There can be no dispute that public records requests can be highly salutary and may expose deficiencies and shortcomings in public performance. But some public records requests may harass public officials or units of government. This reality is seldom acknowledged. The ability to impose charges reflecting the actual cost of compliance has sometimes served as a brake on malicious, frivolous, or unreasonable requests. To some extent, the court removes this brake.

¶ 66. The court's decision changes the dynamics of the public records law. I join Justice Roggensack in asking the legislature to revisit the law to consider the ramifications of the court's decision.

¶ 67. For the foregoing reasons, I respectfully concur.

¶ 68. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). While I agree with the lead opinion that there is no express provision in the Public Records Law that addresses an authority's ability to charge for the time involved in separating the confidential portion of a public record pursuant to the directive of Wis. Stat. § 19.36(6), I do not join the lead opinion, but write in concurrence to note that the court's decision will likely result in one of two scenarios: (1) taxpayers will be required to pay for the statutorily required separation

of voluminous public record requests, rather than the person who will receive and use the records; or (2) public record requests will go unmet due to a lack of necessary personnel to do the separations, while at the same time continuing to carry on the normal operations of the custodial authority.

¶ 69. Fundamentally, this case implicates public policy choices: whether taxpayers or record requesters should bear the financial burden of statutory record separations, and whether the costs associated with voluminous record requests should be addressed in a manner different from that employed for requests of only a few public records. Therefore, although I am aware of and concerned for the significant costs and personnel deployments that voluminous record requests can impose on authorities who are subject to public record requests and who may be operating with diminished revenues and personnel, addressing those concerns is a legislative function, not a function properly undertaken by the courts. Accordingly, I respectfully concur.

## I. BACKGROUND

¶ 70. The Milwaukee Journal Sentinel, through two of its reporters, requested voluminous public records. One reporter requested 2,312 records, and the other reporter requested all incident reports and dispatch records relating to sexual assaults for an entire year. All records requested contained confidential information that Wis. Stat. § 19.36(6) required the Milwaukee Police Department to separate out before fulfilling the Journal Sentinel's record request.[1]

---

[1] Wisconsin Stat. § 19.36(6) provides:

¶ 71. The City estimated that it would be required to expend approximately $5,600 in staff time redacting the records requested in order to separate out confidential information in compliance with Wis. Stat. § 19.36(6). The Journal Sentinel refused to pay and instead brought suit in Milwaukee County Circuit Court.

¶ 72. The circuit court agreed that the City had the right to request payment for the staff time required to separate confidential information contained within the requested public records. The lead opinion reverses the circuit court's decision because the Public Records Law is silent in regard to who is to bear the financial burden of complying with Wis. Stat. § 19.36(6), and because the lead opinion concludes that assessing those costs to the requester may interfere with public record requests.[2]

## II. DISCUSSION

¶ 73. When the legislature enacted the Public Records Law, its goal was to provide public access to records that would assist the public in becoming an "informed electorate." Wis. Stat. § 19.31; *Milwaukee Journal Sentinel v. Wis. Dep't of Admin.,* 2009 WI 79, ¶ 52, 319 Wis. 2d 439, 768 N.W.2d 700. In order to facilitate this goal, the legislature created a "presumption of complete public access." *Id.* Accordingly, statu-

---

Separation of information. If a record contains information that is subject to disclosure under s. 19.35(1)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release.

[2] Lead op., ¶ 5.

tory interpretation in regard to a Public Records Law request is conducted with complete public access as the starting point, and any construction that limits public access is problematic. *Schill v. Wis. Rapids Sch. Dist.*, 2010 WI 86, ¶ 217, 327 Wis. 2d 572, 786 N.W.2d 177 (Roggensack, J., dissenting).

¶ 74. The lead opinion's decision today is driven by those policies that the legislature articulated in the Public Records Law. However, the statutes enacted to further those policies indicate that the legislature did not anticipate voluminous public record requests such as those that the Journal Sentinel and others have made recently. One notable demonstration that the legislature did not contemplate such requests is that the statutory references to the dollar amounts of the costs that were anticipated are very low.

¶ 75. For example, Wis. Stat. § 19.35(3)(c) permits an authority to impose a fee for locating a record "if the cost is $50 or more," and para. (3)(f) permits an authority to require a requester to prepay for, "any fee or fees imposed under this subsection if the total amount exceeds $5." That a cost of $50 in staff time is sufficient to trigger a charge to a requester and a $5 fee is sufficient for an authority's right to require prepayment by a requester indicate that the legislature did not consider voluminous record requests such as the Journal Sentinel and others have made, where the costs to the custodial authorities are in the thousands of dollars.

¶ 76. Although the legislature did give some consideration to costs that an authority is likely to encounter when complying with a public record request, Wis. Stat. § 19.35(3) enumerates the tasks for which an authority may charge the requester. However, the separation costs that are generated by Wis. Stat. § 19.36(6)'s requirement that confidential information be deleted

from public records before the records are provided to a record requester are not mentioned. In addition, § 19.36(6), itself, does not address who is to bear the costs of separation that § 19.36(6) requires authorities to undertake.

¶ 77. However, separation costs can be extensive. For example, a review of the briefs filed in another public records case, *Osborn v. Board of Regents of the University of Wisconsin System*, 2002 WI 83, 254 Wis. 2d 266, 647 N.W.2d 158, shows that the public record requests made to the University required separation of information in *450,000 records*. In order to provide separated University records, a University employee would, at a minimum, be required to copy each record and then redact it to block out information that is of a confidential nature. If a University employee could make copies of the 450,000 records and then do the necessary separation in 5 minutes per record, 2,250,000 minutes or 37,500 hours or 4,687.5 eight-hour days would be required to complete the tasks necessary to comply with Mr. Osborn's public record requests.

¶ 78. If we assume that the University employees assigned to this task earn $10/hour in salary and fringes, providing the separated records would cost the University $375,000.[3]

¶ 79. I don't know what occurred in *Osborn* after the case was heard here. However, if it is still ongoing, because the Public Records Law is silent about who should bear the financial burden of the record separation that Wis. Stat. § 19.36(6) requires, and given the

---

[3] The example of $10/hour in salary and fringes is more than likely too low, but I use it as an example to give some idea about the costs that are arising under public record requests.

opinions today, it is possible that the University may incur $375,000 in expense in order to comply with Mr. Osborn's Public Records Law request. The University will pass this $375,0000 on to the taxpayers of Wisconsin or to the students who matriculate at the University, without any participation by the requester of the records. This is a problem that the legislature needs to consider.[4]

¶ 80. The University of Wisconsin likely could meet the requests Mr. Osborn made. On the other hand, if a small municipality with only one employee is the authority that receives a voluminous public records request requiring statutory separation of information, it is likely that no information will be provided because compliance will be beyond the capacity of the authority. *See George v. Record Custodian,* 169 Wis. 2d 573, 578, 485 N.W.2d 460 (Ct. App. 1992) (concluding that a custodian has the discretion to deny a public records request if the reasons for denial are sufficient to outweigh the strong public policy favoring disclosure). Denial of access based on the substantial burden a voluminous request can create for an authority may be a reasonable exercise of discretion; however, a denial also would cut directly against the access that the legislature sought to achieve by the Public Records Law. Wis. Stat. § 19.31.

---

[4] The legislative history of the Public Records Law indicates that the level of demand for record access "is unknown and not predictable without some actual experience." *See* Fiscal Estimate, 1981 S.B. 250 (Dep't of Admin., 6/22/81), in the Drafting File for ch. 335, Laws of 1981. Therefore, it appears the legislature may have been aware that it would have to revisit the Public Records Law in regard to the costs it would generate for the authorities subject to it.

¶ 81. Accordingly, it would be helpful if the legislature were to revisit the cost issues that have become prominent in public record requests and determine whether the taxpayers should bear the full financial burden for public record requests or whether requesters should be active participants in the cost involved in required record separations.

## III. CONCLUSION

¶ 82. The court's decision today will likely result in one of two scenarios: (1) taxpayers will be required to pay for the statutorily required separation of voluminous public record requests, rather than the person who will receive and use the records; or (2) public record requests will go unmet due to a lack of necessary personnel to do the separations and continue to carry on the normal operations of the custodial authority.

¶ 83. Fundamentally, this case implicates public policy choices: whether taxpayers or record requesters should bear the financial burden of statutory record separations, and whether the costs associated with voluminous record requests should be addressed in a manner different from that employed for requests of only a few public records. Therefore, although I am aware of and concerned for the significant costs and personnel deployments that voluminous record requests can impose on custodial authorities who are subject to public record requests and who may be operating with diminished revenues and personnel, addressing those concerns is a legislative function, not a function properly undertaken by the courts. Accordingly, I respectfully concur.

¶ 84. I am authorized to state that Justices DAVID T. PROSSER, ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this concurrence.